(September 27, 1917.)

## E. A. CRANDALL, Respondent, v. C. O. GOSS, Appellant.

[167 Pac. 1025.]

NORTHERN PACIFIC RAILROAD RIGHT OF WAY AND LAND GRANT—ADVERSE POSSESSION—PUBLIC LANDS.

1. While the right of way granted by sec. 2 of the act of Congress of July 2, 1864 (13 Stats. at L. 365), is being used by the successor to the grantee for railroad purposes title to unused portions, lying along the tracks within the boundaries of the grant, cannot be acquired, as against such successor, by adverse possession.

2. That grant was of a limited fee made on an implied condition of reverter in the event the grantee, or its successors, ceased to use or retain the land for the purpose for which it was granted.

3. Sec. 4538, Rev. Codes, provides: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim." This section applies to public lands held or claimed adversely by an individual subject only to the paramount title of the United States.

4. Where a party has entered into possession of land under claim of title, founded upon a written instrument as being a conveyance of the property in question, and has held it adversely for a period of more than five years, and in all other respects conformed to the statutes of Idaho relative to acquiring title to real estate by adverse possession, and where such property constitutes a known farm or single lot, only portions of which have been inclosed or improved according to the usual course and custom of the adjoining country, the entire tract, including the uninclosed and unimproved portions, will be deemed to have been so claimed and held adversely.

[As to adverse possession of lands devoted to public use, see note in 87 Am. St. 775. As to adverse possession of the public domain, see note in 76 Am. St. 479.]

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. R. N. Dunn, Judge.

Action to quiet title. Judgment for plaintiff. *Affirmed.*

G. H. Martin, for Appellant.

The grant of way was separate and distinct from the grant of lands in aid of building the road. Any doubt that may have existed theretofore in regard to the true construction of this grant and the title and estate conferred by it upon the railroad company was fully cleared up in the case of *Northern Pac. Ry. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. ed. 1044; *Holland Co. v. Northern Pacific Ry. Co.,* 214 Fed. 920, 131 C. C. A. 216.

Under color of title less is required of the adverse claimant than under mere claim of title, as under color of title the possession and proper use, improvement and cultivation of a part will be presumed to extend to the whole tract. Under claim of title the adverse claimant must (1) protect the whole tract claimed with a substantial inclosure; or (2) must have usually cultivated or improved it. That is, the adverse title will be sustained only to the extent of the portion inclosed or cultivated or improved, and will not extend to other portions not so inclosed, improved or cultivated.

If plaintiff has color of title it must be found in his Ex. "A." That deed has not a single ambiguity in it. The land conveyed by it was not only accurately described, but the portion of land now claimed was expressly excluded from its operation.

"A deed is color of title only to that which is shown to be within the description of the grant." (*Ohio etc. Ry. Co. v. Barker,* 125 Ill. 303, 17 N. E. 797; *Weinig v. Holcomb,* 73 Iowa, 143, 34 N. W. 787; *Tate's Heirs v. Southard,* 10 N. C. 119, 14 Am. Dec. 578; *Power v. Kitching,* 10 N. D. 254, 88 Am. St. 691, 86 N. W. 737.)

Until the government declares a reverter, the title remains in the railroad company. (*Northern Pac. Ry. Co. v. Ely,* 197 U. S. 1, 25 Sup. Ct. 302, 49 L. ed. 639.)

Defendant is now claiming title under the original grantee of the government, and whatever right he may have obtained by his deeds from that company is a matter in which he, the railway company and the government are alone concerned.

He is the present holder of the legal title, at least to the extent of occupancy and use, and as against him no presumption will be drawn in favor of the holder of color of title only. (*White v. Harris,* 206 Ill. 584, 69 N. E. 519.)

In actions of this kind the plaintiff must recover, if at all, upon the strength of his own title. (*Delacey v. Commercial Trust Co.,* 51 Wash. 542, 130 Am. St. 1112, 99 Pac. 574.) ·

O. C. Granger and O. J. Bandelin, for Respondent.

The railroad company under its grant from Congress received only a limited fee in all lands given and made upon an implied condition of reverter in the event that the company cease to use or retain the land for the purpose for which it was granted. (*Holland Co. v. Northern Pac. Ry. Co.,* 214 Fed. 920, 131 C. C. A. 216; *Oregon Short Line R. Co. v. Quigley,* 10 Ida. 770, 80 Pac. 401; *Melder v. White,* 28 Land Dec. 412.)

The language used in the exception clause of the deed from the company to Crandall is merely the reservation of a right of way. (*Abercrombie v. Simmons,* 71 Kan. 538, 114 Am. St. 509, 6 Ann. Cas. 239, 81 Pac. 208, 1 L. R. A., N. S., 806; *Hill v. Western Vermont R. Co.,* 32 Vt. 68, 74.)

Upon the abandonment being shown, the title reverted to the owner of the servient estate. (*Mills v. Denver & Rio Grande R. Co.,* 198 Fed. 137.)

This action can be maintained by the plaintiff for the protection of his reversionary rights. (*Neitzel v. Spokane International R. R. Co.,* 65 Wash. 100, 117 Pac. 864, 36 L. R. A., N. S., 522, and cases cited; *Anderson v. Interstate Mfg. Co.,* 152 Iowa, 455, 132 N. W. 812, 36 L. R. A., N. S., 512.)

The respondent is entitled to have the title to the property in controversy quieted in him on the ground of adverse possession. (*Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784.)

Color of title exists whenever there is a reasonable doubt regarding the validity of the apparent title, whether such doubt arises from the circumstances under which the land is held, the identity of the land conveyed or the construction of the instrument under which the party in possession holds his

title. (*Cameron v. United States*, 148 U. S. 301, 308, 13 Sup. Ct. 595, 37 L. ed. 459, 462; *Northern Pac. R. Co. v. Pyle*, 19 Ida. 3, 112 Pac. 678; *Cramer v. Walker*, 23 Ida. 495, 497, 130 Pac. 1002.) Title to easements, franchises, etc., may be lost by abandonment. (1 R. C. L. No. 4, 135 Am. St. 899, and note, 1 L. R. A., N. S., 806.)

Title to a right of way may be acquired by adverse possession. (1 R. C. L. 737, 2 L. R. A., N. S., 775.)

Whatever may be the respective rights of plaintiff and the Northern Pacific Railway in the property, or the respective rights of plaintiff and the United States, the decree of this court should, as between Crandall and Goss, quiet the title to and vest the possession of the premises in plaintiff. (*Northern Pac. Ry. Co. v. Kranich*, 52 Fed. 911; *Northern Pac. Ry. Co. v. Pyle, supra.*)

MORGAN, J.—By an act of Congress, approved July 2, 1864 (13 Stats. at L. 365), there was granted to the Northern Pacific Railroad Company a right of way for a railroad, and lands in aid of the construction thereof, from Lake Superior to Puget Sound. The portions of that act necessary to be considered in deciding this case are as follows:

"Sec. 2. . . . . That the right of way through the public lands be, and the same is hereby, granted to said 'Northern Pacific Railroad Company,' its successors and assigns, for the construction of a railroad and telegraph as proposed; . . . . Said way is granted to said railroad to the extent of two hundred feet in width on each side of said railroad where it may pass through the public domain. . . . .

"Sec. 3. . . . . That there be, and hereby is, granted to the 'Northern Pacific Railroad Company,' its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific Coast . . . . every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt, through the territories of the United States, and ten alternate sections of land per mile on each side of said rail-

road whenever it passes through any state, and whenever on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from preemption, or other claims or rights, at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office; . . . . ''

` The company definitely established its line and constructed its railroad across sections 6 and 7 in township 56 north of range 2, east of Boise Meridian, prior to any right thereto having been acquired which would defeat either of its grants.

In the year 1900, the Northern Pacific Railway Company, successor to the Northern Pacific Railroad Company, made, executed and delivered to respondent a warranty deed wherein it is recited that it "does grant, bargain and convey unto the said party of the second part, his heirs and assigns, the following described tracts of land, situate in the County of Kootenai (now Bonner) in the State of Idaho, that is to say: Lots One (1) and Two (2) and the West half of West half of Northeast quarter of Northwest quarter (W. ½ of W. ½ of NE. ¼ of NW. ¼) of Section No. Seven (7) in Township Fifty-six (56) North, Range Two (2) East of the Boise Principal Meridian, containing, according to the United States Government Survey, exclusive of the following described strip of land, Sixty-four and 58/100 (64 and 58/100) acres, more or less, except a strip of land extending through the same (or so much of such strip of land as may be within said described premises), of the width of four hundred (400) feet, lying between two lines each drawn parallel to and distant two hundred (200) feet from the center line of the main track of the Northern Pacific Railway as the same is now located, constructed and operated on, over or across said described premises, or within two hundred (200) feet of same; . . . . ''

On October 16, 1903, a homestead patent was issued conveying to respondent Lot 7 of sec. 6, said township and range, together with other lands. At the time of these conveyances the main line of the railway company occupied the 400 foot strip across Lot 7, sec. 6, and Lot 1 and the west half of west half of northeast quarter of northwest quarter of sec. 7, but

in 1904 the company changed its line through that part of the country and removed all railroad property from the land above described on to other lands. Thereafter the company made no claim to any of the land in controversy, nor did it in any way occupy any portion of it or list it with the assessor · for taxation or pay taxes upon or otherwise seek to exercise dominion over it, until June 18, 1913, when it made, executed and delivered to appellant a deed wherein it is recited that in consideration of one dollar, and other valuable consideration, the company "to the extent of its legal right so to do, hereby conveys, quitclaims and grants, without covenants, unto the grantee, his heirs and assigns, the right to occupy and use a portion of the right of way of the grantees granted by the act of Congress of July 2, 1864, the premises hereby granted being described as follows:

"A strip of land Two Hundred Sixty-seven (267) feet wide, being Two Hundred (200) feet wide on the northeasterly side of and Sixty-seven (67) feet wide on the southwesterly side of the center line of the original main line of the Northern Pacific Railway as formerly constructed and operated across lot One (1) of section Seven (7), township Fifty-six (56), Range Two (2) east of the Boise Meridian, Bonner County, Idaho; also a strip of land Four Hundred (400) feet wide, being Two Hundred (200) feet wide on each side of said center line across the Northeast quarter of the Northwest quarter (NE. 1/4 NW. 1/4) of said section, excepting so much as lies southerly of a line drawn parallel with and distant One Hundred Fifty (150) feet northeasterly from the center line of the present main line as now constructed and operated."

On July 17, 1913, the company made, executed and delivered to appellant a deed, similar in form to the one last above mentioned, whereby it purported to convey, to the extent of its legal right so to do, the right to occupy and use the following, together with other lands: "All that portion of the original right of way of said Railway Company in Lot seven (7) section six (6) Township fifty-six (56) north, Range two (2) east, B. M., being so much of said lot seven (7) as lies

within two hundred (200) feet of the center line of the main track of said railway as originally constructed and operated, now abandoned, across said section.''

The record discloses that in 1891 respondent established his residence, as a homestead settler, upon land embraced in sec. 7 while it was unsurveyed, and that after the survey, about 1897, discovering he had located on a railroad section, he removed to the tract embraced in sec. 6; that before filing his application for a homestead entry in sec. 6, he entered into a contract to purchase from the railway company the 64.58 acres in sec. 7, pursuant to which the deed heretofore mentioned, conveying that land to him, was made. It further appears that prior to the abandonment of the right of way for railroad purposes respondent fenced and cultivated a portion of it and occupied other portions for different purposes, but that he made no claim of title thereto until after the company had ceased to use it. Ever since the abandonment, for railroad purposes, of the land in controversy respondent has occupied and cultivated those portions of it previously occupied and cultivated by him in about the same manner and to about the same extent as he did theretofore. He claims to be the owner of it by virtue of his patent and deed and by adverse possession. Appellant claims title under his deeds from the railway company.

This action was commenced by respondent to quiet his title. A decree was rendered in his favor from which this appeal was prosecuted.

It is the contention of appellant that in the deed, conveying the tract in sec. 7, from the railway company to respondent, the strip of land 400 feet wide, at that time occupied as a right of way, was excepted; that such exception amounted to something more than a mere reservation of a right of way and that had the company held title under an unconditional grant no part of it would have passed to respondent by this deed. It is conceded, however, that the grant of right of way mentioned in sec. 2 of the act of Congress of July 2, 1864, *supra,* is separate and distinct from the grant of lands in aid of building the road, made in sec. 3 thereof, and appellant

urges that since the purpose of the right of way grant was to withdraw from entry, or other appropriation, a strip of land across the public domain 400 feet in width for the construction of a transcontinental railroad, the grantee therein named was without power to convey it voluntarily and title to it could not be acquired by an occupant by adverse possession, and cites *Northern Pacific Ry. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. ed. 1044, *Holland Co. v. Northern Pacific Ry. Co.,* 214 Fed. 920, 131 C. C. A. 216, and *Northern Pacific Ry. Co. v. Concannon,* 239 U. S. 382, 36 Sup. Ct. 156, 60 L. ed. 342.

It seems to be well established that the title granted by sec. 2 of the act of Congress, above referred to, does not, in cases where the right of way therein provided for is located upon odd-numbered sections, become merged in or affected by the fee-simple title granted to the company by sec. 3 thereof; also that while such right of way is being used for railroad purposes, title to unused portions lying along the tracks within the boundaries of the grant cannot be acquired, as against the company, by adverse possession. The nature and effect of the grant contained in sec. 2 is discussed by Mr. Justice White, in *Northern Pacific Ry. Co. v. Townsend, supra,* as follows:

"The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted. This being the nature of the title to the land granted for the special purpose named, it is evident that, to give such efficiency to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use, would be to allow that to be done by indirection which could not be done directly."

The nature and effect of this grant involves the interpretation of an act of Congress and presents a federal question of which the supreme court of the United States has ultimate jurisdiction. Therefore, its decision in the Townsend case that the grant was a limited fee, made upon an implied condition of reverter in the event the company ceased to retain the land for the purpose for which it was granted, should and does govern this and all other courts.

It is true it is also decided in the case last above mentioned, as well as in *Holland v. Northern Pacific Ry. Co., supra,* that an individual may not, for private purposes, acquire title to a portion of such right of way by adverse possession under a state statute of limitations, but those cases differ from the one at bar in this important particular: In the Townsend and Holland cases the rights of way had not been abandoned, but were in use for railroad purposes, which also appears to be true in case of *Northern Pacific Ry. Co. v. Concannon, supra,* whereas in this case it is clear the company did, in 1904, cease to use or retain the land for the purposes for which it was granted; that it completely abandoned it and rendered it subject to the condition of reverter implied from the language and purpose of the grant.

Neither of the cases cited goes to the extent of holding that where, as in this case, the railroad company has abandoned a portion of its right of way, by removal of its tracks and all other railroad property therefrom and by ceasing to use it for the purpose for which it was granted, subsequent to its sale of the tract of land across which that right of way was situated, the reverter would be to the United States instead of to the owner of the servient fee.

Upon consideration of the object of the grant, which was to procure to be built, maintained and operated a transcontinental line of railroad, and not that there be reserved to the United States title to such isolated sections of the original right of way as might be abandoned by changes in the line of road, presumably with the consent of the United States, and which could serve no useful governmental purpose, we are strongly persuaded that it was the intention of Congress

that upon the abandonment of such portions as might, from time to time, be found no longer useful for railroad purposes, by reason of changes in the location of the tracks, title thereto should vest in the owner of the servient fee. However that may be, the title of the government is not here called in question. Assuming that the abandoned portion of the right of way reverted to the United States and not to the owner of the land across which it .was located, the question presents itself: May one in possession of land, the ownership of which is in the United States, maintain an action to quiet his claim of title and right of possession as against third persons?

The case of *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784, was one involving title to and right of possession of unsurveyed lands lying between a stream and certain fractional lots abutting upon the meander line thereof. It was held that the patentee of the lots, who had been in possession of, and had cultivated, improved and· exercised complete dominion and control over the land lying between them and the stream for a period of time exceeding that fixed by the statutes of Idaho for obtaining title to land by adverse possession, although he derived no title through his patent from the government, could maintain his action to quiet title, as against a third person not a grantee from the government, under sec. 4538, Rev. Stats. (sec. 4538, Rev. Codes), which provides: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

Following the doctrine announced in that case, we hold that this action may be maintained by respondent for the possession of the land in controversy and for the purpose of quieting his title thereto as against appellant.

The remaining question necessary to be decided is as to the extent of respondent's title and right of possession; whether it includes only such portions of land as he has inclosed and cultivated, or the entire abandoned right of way across the lands granted in his patent from the United States and his deed from the Northern Pacific Railway Company.

Sec. 4040, Rev. Codes, provides: "When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree or judgment, or of some part of the property under such claim, for five years, the property so included is deemed to have been held adversely. . . . . "

Sec. 4041 is, in part, as follows: "For the purpose of constituting an adverse possession by a person claiming a title founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases: . . . . 4. Where a known farm or a single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed, according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time, as the part improved and cultivated."

Sec. 4042 provides: "Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

And it is provided in sec. 4043, that "for the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment or decree, land is deemed to have been possessed and occupied in the following cases only:

"1. Where it has been protected by a substantial inclosure;

"2. Where it has been usually cultivated or improved."

And, further, that in no case shall adverse possession be considered established unless it shall be shown that the land has been occupied and claimed for a period of five years continuously, and the party or persons, their predecessors and

grantors, have paid all the taxes, which have been levied or assessed upon such land according to law.

With respect to the payment of taxes the trial court found, as a fact, and the finding is supported by the evidence, that the lands in controversy were never legally assessed for taxation from the fall of 1904, the date of its abandonment by the company, up to and until 1915; that appellant listed said lands in his own name in 1913, and they were also assessed to him for taxation for 1914, and that for those years the taxes on the lands, if any, were paid by both the appellant and respondent.

It will be observed, from an examination of the foregoing sections of the code, that if respondent entered into possession of the abandoned right of way under claim of title, exclusive of other right, founding such claim upon a written instrument as being a conveyance of the property, he will be deemed to have entered into possession of and to have adversely held, not only the portions which he fenced and cultivated, but the entire tract, while if he did not base his claim of right to entry upon a written instrument as being a conveyance of title, his right is limited to that portion of the land protected by a substantial inclosure, or cultivated or improved.

The patent from the United States, conveying to respondent the land situated in sec. 6, makes no mention of the railroad right of way, and he claims the portion of it embraced in that section under his patent, as having reverted to him as the owner of the servient fee. While it is true the language of the deed from the Northern Pacific Railway Company, conveying to respondent the tract situated in sec. 7, expressly excepts that portion embraced within the right of way then occupied by it, he went into possession of it immediately upon its abandonment by the company, proceeding upon the theory, in so doing, that the deed operated as a conveyance of the fee to the subdivisions therein described and that the exception was but a reservation of a strip of land for right of way purposes, title to which reverted to him upon its abandonment. The record discloses that not only was this respondent's belief, but that the company, by removing its property from

the land in question and by its failure to list it for taxation or to exercise any dominion over it for an uninterrupted period of nine years, proceeded upon the same theory.

The question of the sufficiency of written instruments to constitute color of title so that the portions of tracts claimed, but uninclosed and otherwise unimproved or cultivated, will be construed to be adversely held by virtue of the inclosure, cultivation or improvement of other portions has many times been before the courts of last resort, and a compilation of authorities upon this subject is to be found in an instructive note to the case of *Jasperson* v. *Scharnikow*, 150 Fed. 571, 80 C. C. A. 373, 15 L. R. A., N. S., 1178. However, these decisions are based, largely, upon statutes of the states wherein the land was situated and upon facts peculiar to the cases under consideration, so that no fixed rule sufficiently broad and, at the same time, sufficiently definite to meet the requirements of all cases has, so far as we are able to discover, been announced.

It is said in *Cameron* v. *United States*, 148 U. S. 301, 13 Sup. Ct. 595, 37 L. ed. 459, quoting from *Wright* v. *Mattison*, 59 U. S. (18 How.) 50, 56, 15 L. ed. 280: "The courts have concurred, it is believed, without an exception, in defining 'color of title' to be that which in appearance is title, but which in reality is no title. They have equally concurred in attaching no exclusive or peculiar character or importance to the ground of the invalidity of an apparent or colorable title; the inquiry with them has been whether there was an apparent or colorable title, under which an entry or a claim has been made in good faith. . . . . A claim to property, under a conveyance however inadequate to carry the true title to such property, and however incompetent might have been the power of the grantor in such conveyance to pass a title to the subject thereof, yet a claim asserted under the provisions of such a deed is strictly a claim under color of title."

The court in the Cameron case further said: "Color of title exists wherever there is a reasonable doubt regarding the validity of an apparent title, whether such doubt arises from

the circumstances under which the land is held, the identity of the land conveyed, or the construction of the instrument under which the party in possession claims his title.''

In the case of *City of La Crosse v. Cameron,* 80 Fed. 264, 25 C. C. A. 399, it is said: ''The question is not whether the instrument in law conveys title. If that were the question, the statute of limitations would here have no function and need not be considered. These statutes of repose presuppose defects in or total want of title, and are enacted to establish the claim of one in adverse possession under defective title, or under an instrument which in law conveys no title.'' (See, also, *Creekmur v. Creekmur,* 75 Va. 430; *Bell v. Longworth,* 6 Ind. 273.)

Assuming, which we do not decide, that the railroad right of way across the land embraced in respondent's homestead was so reserved from settlement that his patent did not pass title thereto; that the Northern Pacific Railway Company was without authority to convey the portion of the right of way situated in sec. 7, and that the language employed in the deed conveying portions of that section to him is insufficient to constitute a conveyance of the right of way, he entered into possession of the land in controversy under claim of title founded upon the written instruments above mentioned, as being conveyances of the property in question, and, having held it adversely for a period of more than five years, and in all other respects conformed to the statutes of Idaho relative to acquiring title to real estate by adverse possession, his right is that provided for in sec. 4040, Rev. Codes, and the judgment of the trial court is affirmed. Costs are awarded to respondent.

Budge, C. J., and Rice, J., concur.