194 P.2d 608

O'BRIEN v. BEST et al. (NORTHERN PAC. RY. CO., Intervener).

No. 7362.

Supreme Court of Idaho.

June 22, 1948.

Everett E. Hunt, of Sandpoint, for respondent O'Brien.

Bandelin & Bandelin, of Sandpoint, and Cannon, McKenitt & Fraser, of Spokane, Wash., for intervener-respondent.

J. Ward Arney, of Coeur d'Alene, for appellants.

GIVENS, Chief Justice.

Respondent alleged he was the owner of certain described property and under lease, the use of a roadway, as follows:

"All of the North Half of the Northeast Quarter and that part of the Northeast Quarter of the Northwest Quarter, and that part of Lot One (1), lying North and East of the right-of-way of the Northern Pacific Railway Company in Section Twenty-one in Township Fifty-seven, North of Range One East of the Boise Meridian, subject to existing highways. Also the use of a road of not less than 15 feet in width across that part of said Lot One lying South and West of the right-of-way of said railway company to the shore of Lake Pend d'Oreille, as now established and in use, together with all water rights now appertaining to said property, save and except that part of Lot One lying between U. S. Highway No. 10 North of the Northern Pacific Railway Right-of-Way, comprising approximately one acre."

And under lease or license from the intervenor, entitled to the possession of property described as follows, being license No. 65189, designated as Parcel No. 1 on the portion of Plaintiff's Exhibit 5 (A), set forth herein:

PARCEL
(1)

151+97 CROSSING SIGN RT. 15.
151+88. CTR. OF SIGN 10X2 RT. 246
"PEND d'OREILLE LAKE RESORT"
"CABINS, BOATS, MOTORS"

OCCUPANCY OF SMALL
TRIANGULAR PARCEL
Between Stations
160 and 161 below

CROSS-SECTION A-B at Station
161+00, Looking N.W. thru Track,
ETC

"That portion of the Railway Company's 400 foot charter right-of-way extending across the Northeast Quarter of the Northwest Quarter of Section 21 in Township 57, North of Range 1, East of the Boise Meridian, in Bonner County, Idaho, at Kolliner Spur, lying northeasterly of that certain easement (R.W. 3959 W-11086) dated January 6, 1939, from the Railway Company to the State of Idaho, for State Highway known as Forest Highway Project 5–A5."

To lease No. 58747 to P. H. O'Brien and A. L. Faulkner, along and adjacent to the shore of Lake Pend d'Oreille, with pencil notation "3" upon said map:

"That portion of the Railway Company's Main Line right of way in Section 21, Township 57, North, Range 1, East of the Boise Meridian lying between two lines at right angles to the center line of the Railway Company's main track as now constructed at points therein distant respectively 669 feet and 1164 feet northwesterly, measured along said center line from Mile Post 106 (which mile post is located 2780 feet southeasterly, measured along said center line, from the north line of said section) and between a line parallel with and distant 40 feet southwesterly, measured at right angles, from said center line parallel with and distant 200 feet southwesterly, measured at right angles, from the center line of the Railway Company's main track as originally constructed."

Also to lease No. 58746 to P. H. O'Brien and A. L. Faulkner, No. 4289, with pencil notation "4" on the map, covering land between the highway and tracks to the west as follows:

"Beginning at a point distant 10 feet northeasterly, measured at right angles, from the center line of the main tract of the Railway Company's Main Line as now constructed, and 100 feet northwesterly, measured along said center line, from the headblock (Station 157 plus 19) of Kolliner Spur; thence Southeasterly parallel with said center line to said headblock; thence southeasterly parallel with the center line of said spur as now relocated, staked out and to be constructed to a line at right angles to said main track center line at a point therein distant 250 feet southeasterly measured along said main track center line, from said headblock; thence northeasterly along said right angle line of the State Highway as established by easement from the Railway Company to the State of Idaho dated January 6, 1939, said line being 25 feet southwesterly, measured at right angles from the center line of Forest Highway Project 5–A5; thence northwesterly along said highway line to a point distant 200 feet northeasterly, measured at right angles, from the center line of the Railway Company's main track as originally constructed; thence northwesterly parallel with said original main track center line to a line at right angles to said present main track center line through the point of be-

ginning; thence southwesterly along the last mentioned right angle line to the point of beginning."

That he was operating a summer resort catering to sportsmen, campers, fisheimen, tourists, and vacationists, known as Trestle Creek Resort for amusement, recreation and vacationing, partly on the leased premises.

Respondent sued to restrain appellants, Best and Schultz, who likewise operate a similar resort on the Lake shore northwest from respondent's place of business in the southern part of the NW¼NW¼, Section 21, T. 57 N. Range 1 E., B. M. marked "docks" on said map, called Pend d'Oreille Resort, from the retention of a sign directing travel to appellants' place of business, erected and located by appellants on Parcel No 1 leased by respondent from intervenor, known as license No. 65189 and designated by a representation of said sign immediately west of the notation 151 plus 83.8 on the attached map; alleged appellants had torn up his licensed roadway with a bulldozer, and trespassed upon the land leased by respondent aforesaid; asked a permanent injunction against such occupancies and interference, and damages in the sum of One Thousand Dollars.

At appellants' instigation, the Northern Pacific Railway Company was joined as a third party intervenor, which alleged in substance it was the owner under original grant from the United States Government of July 2, 1864, of a right-of-way specifically described as extending 200 feet on either side of the center of the original line of tracks through the NW¼ of Section 21 aforesaid, and beyond, and re-alleged the leases to respondent, asked that its title be quieted in and to the four-hundred-foot strip right-of-way through the NW¼ and southeasterly through Section 21, as designated on the map attached, and Parcel No. 2.

Lot No. 1 is coterminous with the NW¼ NW¼ of Section 21 and referred to both ways.

The denials in appellants' answer are substantially reflected in their cross complaint to respondent's answer, which by reference traversed the complaint in intervention, and thus alleges appellants' claims: the transfer, in Paragraphs II and III, July 27, 1899, by intervenor to Robert Frankowski of the NE¼SW¼ and Lot 1, in Section 21 except intervenor's 400-foot right-of-way, and the later distribution thereof to his widow, Severyna Frankowski.

Paragraph V alleges the change of location of intervenor's main line in 1903–1904 and that:

"In so doing, the railway ceased to use and further abandoned its originally granted right-of-way and at no time since has used for railway purposes more than 200 feet from the center line of the present located line of said railway and at no time since said relocation has the railway exercised any dominion or control over any

portion of the right-of-way beyond 200 feet of the center of said railway on each side thereof; and the site of the sign erected and of the bulldozing done by the defendants (appellants) herein is at least 240 feet north and east of the center line of the present railway line."

Paragraph VI alleges the occupation by intervenor of Parcel No. 2 [1] (so designated on the map and enlarged in the upper right-hand corner) without compensation to appellants.

Paragraph VII alleges the transfer by Severyna Frankowski to Best of: " 'the whole of Lot 1 of Section 21—excepting therefrom the right-of-way of—railway company as originally established and confirmed by federal grant and also a right-of-way—not less than 15 feet in width—' and further granted to the said E. H. Best a triangular plot of land in the SW corner of the NE ¼ of the NW¼ of Section 21, and further granted the said E. H. Best '—such portion of the right-of-way of the said—railway abandoned by reason of relocation of its main line in said NE¼ of the NW¼—'."

Paragraph VIII alleges possession and ownership by appellants and payment of taxes of:

"Beginning at a point North and East from the center line of said present railway where it is intersected by the east line of the original 400 foot grant to said railroad; thence southeasterly along the line of said original grant to intersection of said east line of the original grant with the south line of said Lot 1 and said NE¼ of the NW¼; thence west along the south line of said Lot 1 and the NE ¼ of the NW ¼ to intersection with a line 200 feet parallel and distant from the center line of said railroad; thence northwesterly along a line 200 feet from said center line of said railway to its intersection with the place of beginning, which is referred to hereinafter as parcel No. 1.

"Said sign board and bulldozing are situate on the last above described property.

"Defendants further became and now are the owners of the right to compensation for the approximate .11 acres, which is referred to herein as parcel No. 2."

---

[1] "Beginning at a point in the north line of said Section where same is intersected by the center line of the present main line track of the Railway Company distant 890 feet east of the N. W. corner of Section; thence west along the north line of the Section, a distance of 30.8 feet, to a point of intersection between said north line and the northeasterly boundary of the original 400 foot charter right of way, which is the true point of beginning; thence S. 52° 48' E. 168.4 feet to a point; thence N. 25° 23' W. 112.7 feet along a line parallel with, and distant 50 feet northeasterly from, the centerline of the present main track to point of intersection with the north line of section; thence west along the north line of Section 85.8 feet to the true point of beginning as described hereinbefore. Containing about 0.1 acre."

Paragraph IX alleges non-use for railway purposes by intervenor of any part of parcel No. 1 and that: " * * * for over twenty years prior hereto, a fence has been maintained on the approximate line 200 feet easterly from the center line of said relocated railway bounding parcel No. 1 on the west as a part of the fence line maintained by Frankowski for the whole of the NE ¼ of the NW ¼."

The description in Paragraph VIII, use and occupation thereof, the sign board and bulldozing, all pertain to property east of the original and present rail lines of the railroad; i. e. tracks, and not to any land within or without the original right-of-way of the railway west of either the original or present line of rails. The same is true with regard to the description in the succeeding Paragraph X alleging transfer by Severyna Frankowski to A. F. Eckert (one of respondent's predecessors in interest) of: " * * * 'all of the North ½ of the NE ¼ and that part of the NE ¼ of the NW ¼ and that part of Lot 1 lying north and east of the right-of-way of the Northern Pacific Railway Company in Section 21—subject to existing highways'."

Paragraph X alleges transfer of a 15-foot roadway across Lot No. 1 south and west of intervenor's right-of-way to the shore of Lake Pend d'Oreille and that respondent: " * * * acquired his title under Eckert and, at no time, has the plaintiff herein been in possession of or paid any taxes against either parcel No. 1 or parcel No. 2; but defendants herein have been assessed for and paid and discharged all taxes against parcels Nos. 1 and 2 for over twelve years before the commencement of this action * * * " but makes no reference to any land south or west of the original or present railroad right-of-way.

Title to this roadway was quieted by intervenors against appellants August 15, 1938, entry No. 32, Defts. (Appls.) Ex. B, and it is virtually conceded both appellants and respondent are entitled to the use of this roadway and there is no dispute relative thereto, except in connection with the land through which it runs outside of 50 feet on each side of the present and relocated intervenor's lines of rails.

Paragraph XI refers only to parcel No. 1.

Paragraph XII refers to claimed abandonment of the original right-of-way east and west of the new railway line, but without definite description thereof.

Paragraph XIII refers to U. S. Highway No. 10A and parcel No. 1 and land east of the County road and the bulldozing and erection of the sign, all of which, as indicated above, referred only to land north and east of the original or present line of railway.

In Paragraph XIV, appellants ask to have title quieted to parcels Nos. 1 and 2, or for compensation for the taking and use of parcel No. 2.

Appellants claim title to parcel No. 1 on the theory that, though part of the original charter grant, it had been abandoned by intervenor and has been adversely possessed by appellants, with payment of taxes for the statutory period; and to parcel No. 2 because it was part of the land granted by Frankowskis, in turn conveyed to appellant Best, and intervenor has not paid for the retaking thereof. The prayer of appellants' answer and cross complaint asks that title be quieted only in parcels Nos. 1 and 2.

Respondent claims right of possession of parcel No. 1 under lease from intervenor and makes no claim to parcel No. 2.

The decree quieted title in the disputed pieces of land in intervenor and ordered the removal of the sign and gave respondent injunctive relief against its recurrence or trespassing on the premises leased by him.

Crandall v. Goss, 30 Idaho 661, 167 P. 1025, holds abandoned land in a charter grant to a railroad is subject to adverse possession. Abandonment, however, is expressly held a sine qua non to such method of acquiring title.

In 1903–1904 the Railway re-aligned its tracks through the N½NW¼ of the Section involved herein, consisting of Lot 1 and the NE¼NW¼, and moved them to the west, south of a point midway between Stations 122.8 and 120.5 and moved them east, north thereof and to where the tracks leave the NW¼ of Section 21. A spur was constructed, as indicated on the map, to the east of the tracks in the southern part of this half of the NW¼; and temporary sheep corrals for loading sheep were built, as indicated, along this side track and various leases and grants to rights-of-way covering parts thereof, including parcel No. 1, were given by intervenor.

It was incumbent on appellants to establish their claims of adverse possession as to parcel No. 1 and any land south and west of intervenor's mainline tracks; to prove payment of taxes, abandonment by intervenor, and all elements of adverse occupation by appellants. The burden was similarly, except as to abandonment, on intervenor as to parcel No. 2. Crandall v. Goss, supra; Citizens' Right of Way Co., Ltd. v. Ayers, 32 Idaho 206, 179 P. 954; Pleasants v. Henry, 36 Idaho 728, 213 P. 565; Meyer v. Schoeffler, 39 Idaho 500, 227 P. 1061; Simmons v. Perkins, 63 Idaho 136, 118 P.2d 740; Checketts v. Thompson, 65 Idaho 715, 152 P.2d 585.

Appellants were first assessed for taxes upon any part of the right-of-way, purportedly in parcel No. 1, in 1943, as shown by intervenor's Exhibits 2A and exemption therefor from 1941 to 1945, Appellants' Exhibit D, when such assessment ceased. Mr. Turnbull, Assessor, likewise testified parcel No. 1 was assessed to appellants from 1941 to 1944, but has not been so assessed since 1944. Mr. Kirsten, intervenor's

western tax commissioner having jurisdiction over the territory involved, likewise testified as to the tax rolls in the Treasurer's office:

"Q. In other words, how should it read? A. It should read—

"Mr. Arney: Just a moment, have you examined those yourself? A. I have. It should read northeast of the Northwest and Lot One west of the Northern Pacific right of way and Lot One less tax numbers four and five west of the Northern Pacific right of way and old right of way east of the railroad, all in Section Twenty-one, Township Fifty-seven North Range One East B. M.

"Q. Is there any other item in that connection? A. 1944–1945 are all the same.

"Q. According to the rolls and records of Bonner County how should 1944, the tax roll, how should that item read? A. The northeast of the Northwest and Lot One, less Tax Nos. 4 and 5 west of the Northern Pacific Right of way.

"Q. Doesn't it read that way? A. No, it—they take all of Lot One.

"Q. In other words, it should be Lot One less the right of way instead of all of Lot One as now designated? A. That is true. That's right.

"Q. That is true also of the 1945 designation? A. That is true."

The record, therefore, does not show appellants paid taxes on parcel No. 1 for the necessary five-year period.

Appellants' only occupancy of any part of parcel No. 1 consisted of repairing the fences thereon, picketing a cow on it for awhile, bulldozing and digging some dirt and erection of the sign in dispute herein. They testified they never lived on it, never built any structures or buildings on it, and never cultivated any portion of it.

"* * * an abandonment of any right is dependent upon an intention to abandon and must be evidenced by a clear, unequivocal, and decisive act of the party." Sullivan Const. Co. v. Twin Falls Amusement Co., 44 Idaho 520, at pages 526, 527, 258 P. 529, 530.

"* * * it must be remembered that it requires very convincing and satisfactory proofs to support a forfeiture by abandonment of a real property right. * * *

"'Abandonment may be shown by the facts and circumstances, but clear proof is required to make out a case.' * * *

"'It is elementary that an abandonment of any right is dependent upon an intention to abandon and must be evidenced by a clear, unequivocal, and decisive act of the party.' * * *

"'Abandonment is a matter of intent, coupled with corresponding conduct; thus a question of fact.'" Perry v. Reynolds, 63 Idaho 457, at page 464, 122 P.2d 508, 510; Carrington v. Crandall, 65 Idaho 525, at page 531, 147 P.2d 1009.

"* * * the acts claimed to constitute the abandonment of an easement must show

the destruction thereof, or that its legitimate use has been rendered impossible by some act of the owner thereof, or some other unequivocal act showing an intention to permanently abandon and give up the easement. Here there were absolutely no acts of the kind mentioned." Northern Pac. Ry. Co. v. Tacoma Junk Co., 138 Wash. 1, 244 P. 117, at page 119.

Mere non-use of realty for five years is not sufficient to show abandonment. Riedman et al. v. Barkwill et al., 139 Cal.App. 564, 34 P.2d 744, 745, 746; Wagoner v. Jeffery, 66 Idaho 455, 162 P. 2d 400.

Parcel No. 2 lies to the north and east of the original grant and was part of the N½ of said NW¼ which intervenor received under grant from the Government aliunde the right-of-way grant, and was included in the deed by it to Frankowski, but on which intervenor has concededly paid taxes, and adversely used, since the realignment of its tracks in 1903-1904.

If intervenor paid taxes on any part of parcel No. 2, it paid on all; because, first, parcel No. 2 contains land only within the conceded present 100-foot right-of-way of intervenor, i. e. 50 feet on either side of the present railroad lines; second, by the method under which intervenor is assessed and taxed, it paid taxes on all of such right-of-way, as shown by the testimony of Mr. Kirsten and appellants' admissions:

"Q. Now, in what manner does the Northern Pacific pay taxes in the State of Idaho on property owned by it? * * * A. Well, on the right of way they assess the main track on a mileage basis and the assessment is made by the State Tax Commission and allocated to the various counties according to mileage in the county and that valuation broken down to the various school districts and various taxing districts within the county.

"Q. Then from the Northern Pacific tax standpoint is the area described in Parcel Two and Parcel One operating property? A. I would say yes.

"Q. Therefore, that falls within the tax norm that you just described? A. That is true.

"Q. It couldn't be computed by anyone, the amount of taxes levied on each acre or fraction of acre? A. The assessment is broken down so much per mile, the main track, I don't suppose you could tell how much for valuation for any strip.

"Q. Do you have the figures showing the taxes the Northern Pacific pays on the main line?

"Mr. Arney: I object to that as immaterial. I will concede that a portion of No. 2 has been included in the report of the valuation and that taxes have been paid on the percentage of the main line track going through there. I will concede that."

Intervenor 'thus adversely possessed and paid taxes on parcel No. 2 for more than the statutory period.

Appellants additionally claimed a part of intervenor's original granted right-of-way in the NW¼ of Section 21, Twp. 57 N., Range 1 East, B. M. Appellants forewent a granted rehearing and a stipulation then filed between appellants and intervenor, acquiesced in by respondents in open court, provided this phase of the controversy might be remanded to the trial court ·for further framing the issues in regard thereto and determining the facts. Without discussion or decision, we sanction such stipulation.

 We affirm as proper and correct the quieting of title by the trial court in intervenor to parcels Nos. 1 and 2 described in the decree; consequently, respondent is in turn entitled to the injunction against appellants' interference with his leased land.

To support his claim for damages, respondent testified as follows:

"A. Well, the sign cost me both cabins and boats on new trade that comes there which will naturally go to where the sign points to.

"Q. Have you figured it on a percentage basis on your income for the year? A. I have. I figured ten per cent of the total."

giving the amount of ten percent of the total take of the ensuing months between May and November of 1946, and continuing:

"Q. State whether or not you are still being damaged by virtue of that sign being there by loss of business which is diverted from your resort. A. Naturally. Any business that would come, I am still being damaged.

\* \* \* \* \* \*

"Q. And during the Kamaloop program going on for sometime it has caused quite a bit of competition for that sort of business? A. Yes, if you call it competition.

"Q. How do you specifically know how much money you claim you lost by reason of the erection of this sign? A. I don't claim specific money.

"Q. Then that is just a guess on your part? A. An estimate, sure.

"Q. On what basis do you make that estimate? A. I have no basis.

"Q. You did not operate the business last year? A. Yes.

"Q. The year before? A. The last six years I have operated the business.

"Q. This same business? A. The same business.

"Q. And you had competition from this same resort belonging to Mr. Best? A. I had no competition until this year.

"Q. You didn't use your figures for the last six years as a basis to estimate your

loss? A. I used my figures for this year.

"Q. Just this year only? The fishing up in that section increased this year due to the wide advertising given to the large trout and things of that sort being caught now? A. I didn't have any fishing business.

"Q. I think you are perfectly fair in saying that these figures were just about a guess. A. That is the only way I could estimate them."

Respondent asked for $1,000 damages, and the court awarded $236.40, which is the sum of respondent's monthly estimates.

The above evidence discloses no reason or basis for selecting ten percent. It was purely an arbitrary figure set by respondent without any underlying or supporting evidence of the amount of business done by him before or after the erection of the sign, or the amount of business done by appellants before or after the erection of the sign. Furthermore, respondent had two signs advertising his place of business at the southwestern turn of the 15-foot right-of-way above referred to, the last sign evidently discernible to the traveling public before the road reaches appellants' or respondent's places of business.

 The above evidence with regard to loss of profits is insufficient to sustain the judgment in this regard. De Winer v. Nelson, 54 Idaho 560, 33 P.2d 356; ·Capital Garage Co. v. Powell, 98 Vt. 303, 127 A. 375; Ball v. T. J. Pardy Const. Co., 108 Conn. 549, 143 A. 855, 63 A.L.R. 139; Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc., 343 Pa. 270, 22 A.2d 709; Steffan v. Meiselman, 223 N.C. 154, 25 S.E.2d 626; Cartwright v. Canode, Tex.Civ.App., 138 S.W. 792; Skupen v. Imperial Irr. Dist., 33 Cal.App.2d 392, 91 P.2d 910, #1.

The judgment, as modified, is affirmed. Each party to pay their own costs.

BUDGE, C. J., and HOLDEN, MILLER, and HYATT, JJ., concur.

