The STATE OF IDAHO, Idaho Transportation Department, ex rel. Carl C. Moore, Lloyd F. Barron and Roy I. Stroschein, Idaho Transportation Board, Plaintiffs,

v.

OREGON SHORT LINE RAILROAD COMPANY, a Utah corporation, and Union Pacific Railroad Company, a Utah corporation, Defendants,

Blaine County, City of Ketchum and City of Hailey, M'Lynn Childers, Joan K. Janoe, John F. Schwartz and Clarise M. Schwartz, husband and wife, and all other individuals and organizations similarly situated, Intervenors.

Civ. No. 83–1473.

United States District Court,
D. Idaho.

July 1, 1985.

Duane A. Bybee, Green, Service, Gasser & Kerl, Pocatello, Idaho, for defendants Oregon Short Line R. Co., a Utah corporation, and Union Pacific R. Co., a Utah corporation.

James W. Phillips, Ketchum City Atty., Ketchum, Idaho, for City of Ketchum.

Sandra Shaw, Pros. Atty., Russell G. Pinto, Sp. Deputy Pros. Atty., Hailey, Idaho, for City of Hailey and Blaine County, Idaho.

John C. Ward and Brian R. Hanson, Holland & Hart, Langroise, Sullivan & Smylie, Boise, Idaho, for M'Lynn Childers, Joan K. Janoe, John F. Schwartz and Clarise M. Schwartz, husband and wife.

Robert L. Trabert, Chief Legal Counsel, Patrick W. Fanning, Leonard G. Hill, Attys., Idaho Transp. Dept., Boise, Idaho, for State of Idaho, Idaho Transp. Dept. ex rel., Carl C. Moore, Lloyd F. Barron and Roy I. Stroschein, Idaho Transp. Bd.

## MEMORANDUM DECISION

CALLISTER, Chief Judge.

In its order dated April 5, 1985, the Court, based on the oral agreement of all the parties, determined that the factual issue of abandonment would be submitted to the Court on the statements of fact, affidavits, or other supporting documentation—this in lieu of a trial or evidentiary hearing on that issue.

This is a suit for declaratory relief under 28 U.S.C. § 2201 brought by the State of Idaho, Idaho Transportation Department, and Idaho Transportation Board against two railroad companies, Oregon Shortline Railroad Company and Union Pacific Railroad Company (at times referred to as the "railroads"). Various parties have intervened since the inception of the action, including the City of Ketchum, the City of Hailey, Blaine County and various individuals. Plaintiffs and intervenors seek a declaration from this Court as to whether the defendants have abandoned the railroad line known as the Ketchum Branch and whether the defendants are restricted from conveying good title to the Ketchum Branch under 43 U.S.C. §§ 912, 913 and/or 23 U.S.C. § 316. The purpose of this decision is to determine whether an abandonment of the Ketchum Branch has occurred and to declare, in part, the rights and legal relations of the parties. Further proceedings will be necessary to determine the rights and legal relations of the parties as to other issues which are not at this time before the Court.

## FINDINGS OF FACT

1. The defendant railroads hold title to a 54.19 mile strip of land extending from Richfield, Idaho, to Ketchum, Idaho (the "Ketchum Branch"). The strip of land comprises approximately 1,210 acres. Of those 1,210 acres, 988 were acquired by the railroads from the United States Government under the 1875 General Railway Right-of-Way Act. Stipulation for admission of documents No. 73 (hereafter "Stip. Doc. No. ___").

2. From the mid-1970's to the early 1980's, the railroads had at various times considered abandoning the Ketchum Branch but for a multitude of reasons had delayed making that decision. See, e.g., Stip.Doc. Nos. 1 through 28.

3. At some time in 1982 the Ketchum Branch was given an F.R.A. classification of "1," which meant that railroad cars could not travel in excess of ten miles per hour on the line and that abandonment of the line was contemplated within three years. Stip.Doc. No. 46; Deposition of Michael Pecheos, pp. 16–18, 35.

4. On or about April 22, 1982, the railroads filed a notice of intent to abandon with the Interstate Commerce Commission (ICC). On or about May 17, 1982, defendants applied to the ICC for authorization to abandon the Ketchum Branch due to lack of traffic. On June 28, 1982, the ICC authorized the abandonment of the line and discontinuance of service. Under the terms of the ICC ruling, the railroads were required to notify the ICC in writing within one year if "actual" abandonment were to take place—otherwise the authorization would be revoked. In June of 1983, the defendants gave notice in writing that they had chosen not to proceed with actual abandonment but stated that they instead desired to convert the line to side track; the defendants are presently using the line as side track for storage purposes. Stip.Doc. Nos. 68, 73 and 81.

5. As of April 1985, the defendant railroads were storing approximately 600–700 railroad cars on the Ketchum Branch. Affidavit of Billy Michael Swindall; Deposition of Billy Michael Swindall, pp. 13–14; Deposition of Robert T. Bateman, pp. 6–7. These cars are generally idle awaiting assignment, repair, dismanteling, or sale as scrap material. See Bateman and Swindall

depositions, *supra.* There are cars "switched" on and off the Ketchum Branch on an intermittent basis when weather allows. Swindall deposition, pp. 16–19; Bateman deposition, p. 9. Most or all of the cars are stored on the southern half of the Ketchum Branch, south of Mile Post 34, i.e., the part of the track which extends from Richfield to Picabo, Idaho. Swindall affidavit, *supra.* The cars are so stored to make access to them economical and to place them in close proximity to the railroads' Pocatello repair facility. *See, generally,* depositions of Bateman and Swindall, *supra.*

6. Use of railroad lines for storage purposes is a common practice in the industry. Bateman deposition, pp. 12–13; Swindall deposition, generally; Stip.Doc. Nos. 79–81.

7. The Ketchum Branch is designated as a "long-term storage" side track meaning that cars will be stored on the line for relatively longer periods of time due to weather-created access problems and the particular condition of cars stored there. It is possible for some cars to remain in storage on the Ketchum Branch for up to four-five years. Bateman deposition, pp. 12–17.

8. As of October 1984 the entire Ketchum Branch, including ties, bridges (except the bridge located at Mile Post 68.13), ballast, and fill was in excellent condition for use as side track and storage. Pecheos deposition, pp. 19–23.

9. A bridge at the extreme north end of the Ketchum Branch, at Mile Post 68.13, is impassable at the present time. Affidavit of Avery Floyd. The remainder of the Ketchum Branch, however, would be safety passable with minor maintenance work, for example, chipping away asphalt where the rails have been paved over at road crossings. Pecheos deposition, pp. 22–23; Bateman affidavit.

10. Only minor "spot maintenance" has been done in the last five years on the Ketchum Branch, which is adequate maintenance for use of the line as storage and side track. Pecheos deposition, pp. 26–27.

11. The railroad crossings between Picabo and Ketchum—the northern half of the Ketchum Branch—have apparently been given "exempt" status by the Idaho Transportation Department so that school buses and other vehicles need not stop there as required by Idaho statutes. Affidavit of George F. Oberle; Affidavit of Jim Dorr. In ruling on these exempt crossings, the Idaho Transportation Department gave its opinion that the railroad had abandoned the Ketchum Branch. Oberle affidavit and attachments.

12. Defendant railroads have paid and continue to pay property taxes to the State of Idaho and the various counties and cities through which the Ketchum Branch runs. Affidavit of P.J. Emanuel; Stip.Doc. No. 49.

13. Defendants have leased and continue to lease encroachment easements across the tracks to the State of Idaho and the various counties and cities through which the Ketchum Branch runs. First Affidavit of R.F. Niehaus.

## CONCLUSIONS OF LAW

By virtue of this Court's prior ruling, *see* Memorandum Decision and Order dated May 1, 1985, the statutory test of abandonment contained in 43 U.S.C. § 912, as opposed to the common-law rule, governs in this case on the question of whether an abandonment has occurred under the particular facts before the Court.[1] Section 912 reads as follows:

*Disposition of abandoned or forfeited railroad grants*

Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad or as sites for railroad structures of any kind, and use and occupancy of said lands for such purposes has ceased or shall hereafter

---

1. Though common-law principles of abandonment are not controlling, the Court will look to them for guidance on the question of whether abandonment has occurred.

cease, whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment be transferred to and vested in any person, firm, or corporation, assigns, or succesors in title and interest to whom or to which title of the United States may have been or may be granted conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures of any kind as aforesaid, except lands within a municipality the title to which, upon forfeiture or abandonment, as herein provided, shall vest in such municipality, and this by virtue of the patent thereto and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever: Provided, That this Act [this section] shall not affect conveyances made by any railroad company of portions of its right of way if such conveyance be among those which have been or may hereafter [after Mar. 8, 1922] and before such forfeiture or abandonment be validated and confirmed by any Act of Congress; nor shall this Act [this section] affect any public highway now on said right of way [on Mar. 8, 1922]: Provided further, That the transfer of such lands shall be subject to and contain reservations in favor of the United States of all oil, gas, and other minerals in the land so transferred and conveyed, with the right to prospect for, mine, and remove same.

(Brackets in original).

To state the obvious, the statute is not conducive to leisurely reading. The Court paraphrases the statute as follows:

### § 912

1) Whenever public lands which have been [may be] granted to railroads for use as right-of-way

*and*

2) Use *and* occupancy of the land for *such purposes* has ceased

    (a) by forfeiture

*or* (b) by abandonment

    (1) as decreed by a court with jurisdiction

*or* (2) as declared by Act of Congress
gress

*then*

3) All right/title/interest of the United States in such lands shall be transferred to and vested in any person or entity to whom the United States has granted title by a conveyance purporting to convey lands traversed by a railroad.

*except*

    (a) Lands embraced in a public highway established within one year of declaration of forfeiture or abandonment [shall belong to the state]

*or*

    (b) Lands within a municipality upon forfeiture *or* abandonment, title shall vest in the municipality without need of any conveyance.

4) Provided: This Act shall not affect conveyances made by railroads which have been validated by an Act of Congress [and before abandonment or forfeiture occurred].

As the Court reads § 912, the test regarding abandonment is that "use and occupancy" of the railroad right-of-way for railroad purposes must cease in order for abandonment to occur. As the Court views the record in this case, neither use nor occupancy of the Ketchum Branch right-of-way has ceased, and thus, no abandonment has occurred.

Unfortunately, there is little case law construing § 912; that which does exist deals with issues not before the Court at this time. *See,* e.g., *Allard Cattle Co. v. Colorado and Southern Railway Co.,* 33 Colo.App. 39, 516 P.2d 123 (1973) (§ 912 does not allow abandonment which serves merely to diminish the width of the railroad's right-of-way—abandonment must be

as to entire width of the right-of-way). Nor is the legislative history helpful for it deals almost entirely with the nature of the railroad's right-of-way property interest. *See* this Court's prior Memorandum Decision dated May 1, 1985. The Court is not aware of any case in which the terms "use", "occupancy," and "[railroad] purposes" have been construed. In such circumstances, long-established principles of statutory construction dictate that the language used by Congress in this statute be given its plain and apparent meaning.

The record shows that Ketchum Branch is being "used" for railroad purposes. This is particularly apparent as to the southern half of the line where 600–700 railroad cars are now being stored awaiting repair, dismanteling, sale, or further service. These cars are periodically switched on and off the line for the above-described purposes, though many of the cars stay on the track for long periods of time. The northern half of the Ketchum Branch is also in use for railroad purposes, if for no other reason than storage of ties, rails, ballast and fill, all items of considerable resale or salvage value according to information contained in the record. Further, there is also some indication in the record that the Ketchum Branch might at some further time be required to store a greater number of cars that are to be used for some other purpose.

The undisputed facts show that the Ketchum Branch is also "occupied" for railroad purposes. As already stated, there has been no removal of the trackage nor any other railroad structures along the entire Ketchum Branch. Railroad cars occupy the southern half of the Ketchum Branch. Further, the railroad has paid and continues to pay property taxes to the appropriate governmental entities for the entire Ketchum Branch. Under the plain meaning of the statutory language in § 912, the railroad continues to use and occupy the Ketchum Branch for railroad purposes.

■ In reaching its decision, the Court has also looked for guidance to the case law dealing with common-law principles of abandonment. The classic statement of the rule is that for abandonment to occur there must be (1) present intent to abandon, and (2) physical acts evidencing clear intent to relinquish the property interest. *See,* e.g., J. CRIBBET, *Principles of the Law of Property* pp. 345–46 (2d ed. 1975); *O'Brien v. Best,* 68 Idaho 348, 194 P.2d 608, 613 (1948).

The record, when viewed as a whole, shows no present intent to abandon the Ketchum Branch. It is insufficient that the defendants contemplated, discussed, or even made preliminary plans toward abandonment of the Ketchum Branch. For various reasons, railroad officials on a number of occasions in the past decade delayed or reconsidered abandoning the Ketchum Branch, the most recent reason being that the railroad did not want to jeopardize its ability to negotiate the sale of the right-of-way to the State of Idaho. Stip.Doc. No. 81. The Court believes that the evidence clearly weighs in favor of the finding of a lack of present intent to abandon.

Plaintiffs and intervenors argue, however, that the defendants' application to the ICC for authorization to discontinue service on the Ketchum Branch is prima facie evidence of intent to abandon. A fair number of courts have rejected this argument. *State ex rel. Washington Wildlife Preservation, Inc. v. State,* 329 N.W.2d 543, 548 (Minn.1983); *Hennick v. Kansas City Southern Railway Co.,* 364 Mo. 883, 269 S.W.2d 646, 650–51 (1954); *Lacy v. East Broad Top Railroad and Coal Co.,* 168 Pa.Super. 351, 77 A.2d 706, 710 (1951). Defendants are correct in arguing that mere discontinuance of railroad services does not amount to an abandonment of the railroads' entire right-of-way. By its terms, the ICC certificate of abandonment contemplated that the railroad might, in fact, choose not to proceed with "actual" abandonment:

(3) Subject to the conditions as set forth above and provided no offer for continued rail operations is received, actual abandonment may be effected by

OSL and UP after the effective date of this certificate and decision.

. . . .

(6) If the authority granted in this certificate and decision is not exercise within one year from its effective date, it shall be of no further force and effect.

ICC Certificate of Decision, Exhibit B to Plaintiffs' Complaint. This is precisely what occurred in the present case. Although they discontinued service, the railroads chose to convert the Ketchum Branch to side track, a recognized use of railroad line, as opposed to actual abandonment of the line.

In addition to finding no intent to abandon, the Court also finds a corresponding absence of sufficient physical acts to constitute an abandonment. In a majority of cases reviewed by the Court, abandonment was generally found only where all or most of the following acts had occurred:

1. Railway service had been discontinued;

2. Trackage and other railroad structures had been removed;

3. Right-of-way had not been used for any railroad purpose;

4. Maintenance of the line had been discontinued. See 65 Am.Jur.2d §§ 82–83 at pp. 391–93 (1972 and 1984 Supp.) and cases cited therein.

Likewise, *if some or all of the following occurred, abandonment generally was not found:*

1. The railroad had paid taxes on the right-of-way;

2. The right-of-way was used for some railroad purpose even if railroad service had been discontinued;

3. Trackage was left intact along with other railroad structures such as bridges, ballast, and barricades. *See id.*

In weighing the above-listed factors, the Court believes that the record shows that no physical abandonment of the Ketchum Branch has occurred. The evidence shows that the Ketchum Branch is in good-to-excellent condition for side track and storage usage and that the entire line—with minor maintenance—is safely passable, with the exception of the bridge at Mile Post 68.13, located at the extreme northern end of the Ketchum Branch. For these reasons, the Court finds no physical abandonment.

As the above discussion illustrates, there has been no abandonment under either § 912 or under common-law principles of abandonment.

In accordance with the views expressed in this memorandum decision, the Court makes the following partial declaration of the rights and legal relations of the parties under 28 U.S.C. § 2201:

1. No abandonment of the railroad line known as the Ketchum Branch has occurred in the present case;

2. In order for abandonment of the Ketchum Branch to occur in the future the Court declares that the following must occur:

a. The railroads must cease paying taxes;

b. The railroads must take up the tracks and other railroad structures or the line must become completely unusable, even for side track purposes;

c. The railroads must have the intent to abandon—as evidenced by statements and conduct;

d. The railroads must cease using the line for any railroad purpose;

e. This Court or Congress must decree that abandonment has occurred.