(May 8, 1914.)

ANDREW COOLIN, Respondent, v. W. A. ANDERSON, Appellant.

[140 Pac. 969.]

CONTRACT FOR CONVEYANCE OF FRACTIONAL SECTION ABUTTING ON LAKE —UNPLATTED AREA BETWEEN MEANDER LINE AND WATER LINE— MISTAKE OF LAW NOT BASIS FOR EQUITABLE RELIEF — ATTORNEY FEE IN FORECLOSURE SUIT.

1.   Where the original government survey of a fractional section of land, abutting on a lake, left a tract of nearly 40 acres between the meander line of said section and the water line of the lake, which tract remained unsurveyed, and was not shown on the government plat, and thereafter a dispute arose between land owners and land claimants, as to whether such unplatted land belonged to the fractional section, such dispute involved a question of law which could not be determined by the parties without adjudication in the proper court.

2.   The mistake of a purchaser, as to what was included within the bounds of a legal subdivision of land, cannot be the basis for equitable relief in his favor as against an action for the recovery of the purchase price, when it is not shown that any material misrepresentations were made by the vendor, and it appears that complainant himself was negligent.

3.   *Held,* that the trial court committed no error in the admission or exclusion of evidence.

4.   *Held,* that an attorney fee of $1,000, under the circumstances of this case, where the amount of $10,181.64 was recovered against defendant in a suit for foreclosure of a mortgage, defendant having gone to trial on an answer and cross-complaint, was properly allowed by the trial court.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County.   Hon. R. N. Dunn, Judge.

Action for foreclosure of mortgage and counterclaim on part of defendant.   Judgment for plaintiff.     *Affirmed.*

E. N. LaVeine, for Appellant.

The court was not warranted in allowing an attorneys' fee of $1,000, for the reason that no contract was shown to have

been entered into between the respondent and his attorneys. (*Porter v. Title Guaranty & Surety Co.*, 17 Ida. 364, 106 Pac. 299, 27 L. R. A., N. S., 111.)

The rule is that a purchaser may be entitled to an abatement of his purchase price for a defect in his title, a partial failure of title, a deficiency in quantity of land purchased or on account of other facts which make it inequitable that the vendor should receive the full purchase price. (*Dykes v. Bottoms*, 101 Ala. 390, 13 So. 582; *Archer v. Turrell*, 66 Ark. 171, 49 S. W. 568; *Ladd v. Chaires*, 5 Fla. 395; *Satterfield v. Spier*, 114 Ga. 127, 39 S. E. 930; *Scheible v. Slagle*, 89 Ind. 323; *Carlton v. Smith*, 33 Ky. Law, 647, 110 S. W. 873; *Rockwell v. Wells*, 104 Mich. 57, 62 N. W. 165; *Ransom v. Shuler*, 43 N. C. 304; *Sutton v. Kautsman*, 6 Ohio Dec. 910, 8 Am. Law Rec. 657; *Tyson v. Eyrick*, 141 Pa. 296, 23 Am. St. 287, 21 Atl. 635; *Rich v. Scales*, 116 Tenn. 57, 91 S. W. 50; *Holden v. Reed*, 45 Tex. Civ. App. 465, 101 S. W. 288; *Clarke v. Hardgrove*, 7 Gratt. (Va.) 399; *Baldwin v. Brown*, 48 Wash. 303, 93 Pac. 413; *Smith v. Ward*, 66 W. Va. 190, 66 S. E. 234, 33 L. R. A., N. S., 1030; *Turner v. Pierce*, 31 Wis. 342.)

McNaughton & Berg, for Respondent.

It cannot be said in the case at bar that Anderson had the same means of knowing whether or not the disputed meadow lands belonged to section 7 that Mr. Ulbright had. (*Murray v. Paquin*, 173 Fed. 319.)

This court has passed upon questions very similar to those raised in this case, concerning alleged fraud or misrepresentation in the making of a contract. (*Tipton v. Ellsworth*, 18 Ida. 207, 109 Pac. 134; *Smith v. Smith*, 4 Ida. 1, 35 Pac. 697.)

"A misrepresentation in order to affect the validity of a contract must relate to some matter of inducement to the making of the contract where the purchaser relies on the superior knowledge and information of the seller, not where the purchaser has equal means of information and may rely upon his own judgment." (*Hill v. Bush*, 19 Ark. 522; *Bennett v. Hickey*, 112 Mich. 379, 70 N. W. 900.)

"The law will not aid or help either of the parties on the ground that he himself has not used diligence· and common sense, if the means of information is equally open to both and there has been a mistake without fraud or falsehood." (*Nelson v. Hudgel,* 23 Ida. 327, 130 Pac. 85; *Breshears v. Callender,* 23 Ida. 348, 131 Pac. 15.)

The $1,000 allowed by the lower court for attorneys' fees was a reasonable amount. Attorneys must necessarily exercise considerable care and painstaking in the preparation of the case under an answer as broad and indefinite as the answer filed in this case. (*Warren v. Stoddard,* 6 Ida. 692, 59 Pac. 540.)

AILSHIE, C. J.—Fractional sec. 7, Tp. 51 N., R. 5 W., B. M., in Kootenai county, is a strip of land containing somewhat over 200 acres, bordered on the west by the irregular meander line of Mud (or Sucker) lake. At the north end of this section the shore line of the lake, curving sharply to the west, diverges abruptly from the meander line, leaving a tract of nearly 40 acres between the meander line and the water line, immediately south of the north line of sec. 7 extended. In other words, the government surveyor fixed his meander line so far inland at this point that the tract of land referred to was left outside of any legal subdivision of his survey, and therefore had no official existence on the government plat.

The nondescript status of this tract of land gave rise to the controversy adjudicated in the case of *Ulbright v. Baslington,* 20 Ida. 542, 119 Pac. 294; and is also the moving cause of litigation in the present case.

On July 6, 1909, A. Ulbright and Mary H. Ulbright, husband and wife, entered into a contract with W. A. Anderson of Spokane, Wash., appellant herein. By this contract the Ulbrights agreed to convey to Anderson certain real and personal property situated in Kootenai county, including most of sec. 7, above referred to, in exchange for certain lands owned by Anderson in the state of Washington. The Ul-

brights were also to receive the further consideration of $10,000 to be evidenced by two promissory notes in their favor, secured by a mortgage on the Idaho lands conveyed to Anderson. One of these notes was to be for $2,000, due Aug. 25, 1909, the other for $8,000, to be due in five years. The notes and mortgages were to be executed and deeds exchanged as soon as certain conditions, specified in the contract, had been complied with, such as surveying the land to be conveyed by the Ulbrights, and furnishing abstract of title. The Ulbrights agreed to give possession of the property they were transferring upon the payment of the $2,000 note.

On July 26, 1909, the parties executed the papers called for by their contract of July 6th, although the Ulbrights had not yet complied with the terms of the contract which required them to have their land surveyed. It appears that the appellant Anderson was already negotiating for a sale of the Ulbright property and desired to acquire title to it without further delay. He was therefore willing to waive compliance with certain preliminary requirements called for by the contract. On this date, therefore, at the solicitation of Anderson, the deeds were executed by the parties, the notes and mortgage were signed by Anderson and the papers placed in escrow, to be delivered upon Anderson taking up the $2,000 note.

The original contract of July 6th excepted from the transfer of fractional sec. 7 about twenty acres at the south end of the section, and it contained the following provision: "First parties agree to pay second party $40 in cash for each acre that the land in sec. 7, herein transferred, falls short of 200 acres above the waters of Sucker Lake; said payment of cash to be made upon the termination of this contract." On Aug. 19, 1909, the same parties made a supplemental contract, wherein is recited the conveyance to Anderson of July 26th, and continuing as follows:

"WHEREAS, it was understood and agreed by and between the parties hereto that the said Anderson was to have possession of said lands on or before August 25, 1909; and

"WHEREAS, certain controversies have arisen between the parties of the first part and pretended owners of a portion of the lands above described; and

"WHEREAS, the said parties of the first part are unable to give possession of the lands in controversy and are also unable to give possession to the party of the second part of the crop of hay on the lands in controversy, at the time as agreed upon;

"Now, THEREFORE, as a consideration for the extending of the time to the parties of the first part to obtain possession of the lands in controversy for and on behalf of the party of the second part, and as a waiver of the rights of the said W. A. Anderson as to the crop of hay now standing and growing upon said lands in controversy, the parties of the first part do hereby agree to convey to the party of the second part the following described lands, situate in Kootenai County, State of Idaho, to wit'':

Then follows a description of the twenty acres remaining in section 7 which had been excepted by the Ulbrights in their deed of July 26th, after which the agreement concludes with the following paragraph:

"It being understood, however, that this agreement does not in any way release the parties of the first part from the terms of the warranty deed first above mentioned, and from using all diligence in obtaining possession of the disputed lands for the party of the second part herein and that said title is to be obtained by said parties of the first part for the party of the second part within a reasonable time from date hereof.''

On the same day, Aug. 19th, Anderson paid the $2,000 note specified in the contract, though by the terms of the contract it was not due until the 25th, and the papers evidencing the entire transaction were delivered to the parties entitled to them, including a deed for the remaining twenty acres in sec. 7 not included in the original contract of July 6th.

By the terms of the mortgage given the Ulbrights to secure Anderson's $8,000 note, the mortgagees had the option of declaring the note and mortgage due on default of any interest payment. No payments of interest were ever made. On

Jan. 9, 1912, the Ulbrights assigned the note and mortgage to one Perry Krebs, and on Oct. 30, 1912, Krebs assigned to Andrew Coolin, the respondent in this case. Soon after obtaining this assignment Coolin began foreclosure proceedings, upon the termination of which he secured judgment in the lower court for $10,181.64, and the further sum of $1,000 as attorney fees, and costs, from which judgment this appeal was taken.

During the whole period of these transactions between the Ulbrights and Anderson, a dispute had been in progress between the Ulbrights and certain land owners or claimants adjoining them on the north,—Baslington and Wright,—as to the ownership of the unsurveyed and unplatted tract of land referred to in the beginning of this opinion. The contention of appellant is that the Ulbrights concealed this dispute from him at the time he contracted for the purchase of sec. 7, and that Mr. Ulbright positively represented to him, at the time he showed him over the land, that the unsurveyed and unplatted tract referred to was a part of sec. 7, thereby inducing him to make the purchase.

In his answer the defendant admitted the execution of the note and mortgage and the nonpayment of interest, but denied that the plaintiff was the lawful holder. In his affirmative defense he recites the conditions of the contract of July 6th, and makes the following allegation:

"That at the time of said purchase of said section seven (7) hereinabove set forth, in order to induce the defendant herein to make said purchase and to execute said mortgage and said notes as a part of the purchase price thereof, said above mentioned A. Ulbright and Mary H. Ulbright, his wife, did show to this defendant said section seven (7) hereinabove set forth and included in said mortgage, and did, at the time of showing said lands take this defendant upon said section seven and show him the north line of said section seven and show him all of the land lying south of said north line of said section seven between said north line of said section seven and the water line of what is known as Sucker lake, and did, at said time represent to this defendant, that they were the

owners of and possessed of all of said section seven, and did represent to this defendant, that all of the land lying south of the north line of said section seven, and particularly the land lying between said north line of said section seven and the water line of said Sucker lake, bounded on the west by the north and south line of said section seven, which said line is the same as the west line of Township Fifty-one (51), Range Five (5) W., B. M., when extended into the waters of Sucker lake, was owned by said A. Ulbright and Mary H. Ulbright, his wife, and was a part of said section seven, and did sell the same to this defendant as a part of said purchase and sale.

"That said land so shown and represented to be owned and possessed by said A. Ulbright and Mary H. Ulbright, his wife, in said section seven, as above set forth, between the north line thereof, and the said water line of Sucker lake, was very valuable land, and this defendant, relying on the value thereof and the representations made by said A. Ulbright and Mary H. Ulbright his wife, that they were the owners thereof, was thereby induced to purchase said lands as above set forth, and to execute said notes and mortgage set forth in the complaint."

In a succeeding paragraph he alleges his damage in the sum of $10,000 on account of not being placed in possession of said land.

Defendant's allegations of misrepresentation on the part of the Ulbrights, as to the land embraced in sec. 7, were not proved on the trial; in fact, the preponderance of the testimony was the other way. Against the testimony of Anderson that these representations were made is the testimony of Ulbright, to the effect that Anderson was informed, before the contract of July 6th was entered into, of the dispute in regard to the unsurveyed land. Ulbright is corroborated in this by the witness Mauser, who went with Ulbright and Anderson at the time Ulbright showed Anderson the boundaries of the land he proposed to sell to appellant. Mauser testified that Ulbright said at that time in the presence of Anderson: "He

figured about fifteen or sixteen acres in that meadow, but that he was not positive that that belonged to section 7.''

By referring to the recitals in the agreement of Aug. 19, 1909, above quoted, it is apparent that Anderson was at that time certainly aware of the controversy over the land in dispute, since one of the considerations for the deeding of the additional twenty acres by the Ulbrights was, ''Whereas, certain controversies have arisen between the parties of the first part (Ulbrights) and pretended owners of a portion of the lands above described; and

''Whereas, the said parties of the first part are unable to give possession of the lands in controversy.''

Nevertheless, at this time Anderson proceeded to make the first payment of $2,000 on the contract and the purchase was consummated by delivery of the deeds to the property.

It is contended by counsel for appellant that language in the contract of Aug. 19th amounts to an unconditional guaranty of title from Ulbright to the land in controversy. A reading of the contract, the material parts of which we have set forth above, will show that it does not bear out such construction. As already stated, the contract begins by reciting the conveyance made to Anderson by Ulbrights on June 26th, and it then describes exactly, *by legal subdivisions,* the lands conveyed by Ulbrights at that time. It specifies ''and all of section seven (7) except a strip of ground,'' followed by the reservation already mentioned. When, therefore, the contract goes on to say: ''Whereas, certain controversies have arisen between the parties of the first part and pretended owners of a portion of the *lands above described,''* the assumption is plainly made that the lands in dispute are a part of sec. 7, and it is evident that only upon that assumption did Ulbright contract to use ''all diligence in obtaining possession of the disputed lands for the party of the second part herein, and that said title is to be obtained by said parties of the first part for the party of the second part within a reasonable time from date hereof.'' The conclusion follows that when the ''disputed lands'' were adjudicated not to

belong to sec. 7, Ulbright's obligation to secure title for them to his grantee ceased.

Soon after the deal was closed between Anderson and the Ulbrights for the transfer of sec. 7, the Ulbrights, in accordance with their agreement of Aug. 19th, began a suit in the district court against Baslington for possession of the disputed area. This suit was decided in Ulbright's favor in the district court and appealed to this court, in which the judgment of the lower court was reversed. (*Ulbright v. Baslington,* 20 Ida. 542, 119 Pac. 294.) By this decision it was held that "the appellant (Wright, intervenor), is entitled to take the upland between his meander line and the lake within side or boundary lines drawn from the end of the meander line at each side of his tract of land to the center of the lake," and Wright accordingly secured the disputed land. That controversy was thus finally settled adversely to the contention of Ulbright and his grantee Anderson.

In our opinion the vital and controlling question in this case is: Can the mistake of a purchaser, as to what is included within the bounds of a legal subdivision of land, be the basis for equitable relief in his favor as against an action for the recovery of the purchase price?

As above stated, the appellant entirely failed to prove at the trial that any deceit or imposition was practiced upon him by the vendor Ulbright. The evidence shows that the bargain was of appellant's seeking; his own testimony discloses that the original contract for the transfer of this property was drawn from memoranda made by appellant himself. This contract is carefully drawn, with the evident design of protecting appellant in every possible way. However, appellant did not wait for certain preliminary requirements or conditions of the contract to be performed by the Ulbrights before making the first payment and receiving his deed. Again, he was the active or moving party, and, as the evidence shows, induced the Ulbrights against their inclination to accelerate the transaction and close the deal, in advance of the time specified in the contract, in order that he might acquire title and be in a position to make another deal which

he had in view. All this time he had knowledge, according to the preponderance of the testimony, of the uncertainty existing as to the actual area of fractional sec. 7. Moreover, according to the abstract of title to the property, which is an exhibit in the case, he had constructive notice that a claim to the disputed area was of record in the county recorder's office at the time he signed the original contract on July 6th. When the deeds were exchanged and the transaction consummated on Aug. 19th, he voluntarily waived the contractual requirement for the establishment of lines and corners; and it is apparent that at least a part of the consideration for the deeding of the additional twenty acres which he received from the Ulbrights on that date was the relinquishment on his part of any claim to rebate on the purchase price, should sec. 7 eventually prove to contain less than 200 acres.

Counsel for respondent have cited in their brief a number of cases on the question of mistake in contract, most of which relate to the question of equitable relief for mistakes of fact. As held by this court in a recent case:

"Where parties are mutually cognizant of the facts acted upon, or stand upon the same footing with relation to them, and there exists no fiduciary relation between them, the law will not lend its aid to help the injured party for the simple reason that he has not himself used diligence and common sense, if the means of information is equally open to both parties, and there has been a mistake without fraud or falsehood." (*Nelson v. Hudgel,* 23 Ida. 335, 130 Pac. 85.)

A somewhat different question is raised in the present case. The controversy as to the legal area of fractional sec. 7 involves not a question of fact, but a question of law. By no known method of investigation for the ascertainment of facts could it be determined how this question might be resolved in the courts.

Suppose, for instance, Anderson had insisted that Ulbright comply with that provision of the original contract which required of Ulbright that "All lines and corners are to be properly extended and marked according to official survey," and an expensive and elaborate survey had accordingly been

made. It is apparent that the legal question as to whether the unsurveyed and unplatted tract of land in controversy belonged to sec. 7 would not have been affected in the least by such survey. The only means of settling that question was by judicial procedure. Ulbright appears in good faith to have promptly resorted to that mode of determination. Almost immediately after the contract of July 6th was made he began suit in the district court to have this matter adjudicated.

It is obvious that neither he nor anyone else could know in advance what would be the result of that suit. In other words, Anderson took his chance on the issue of this litigation. Even if the Ulbrights made the misrepresentations to Anderson in reference to this land being a part of sec. 7, which Anderson avers, such misrepresentations would have been statements of a proposition of law.

"A statement of a proposition of law which the defendant had just as good an opportunity to ascertain the correctness of as had the plaintiff, whether true or false, could not be used as a defense in an action upon the note." (*Smith v. Smith*, 4 Ida. 1, 35 Pac. 697.)

It may indeed be admitted that the rule, that a mistake of law does not excuse, would not apply where the mistake of one party to the contract was induced by misrepresentations of the other. But, as we have seen, no such misrepresentations have been proved in this case.

It may also be conceded that where ignorance of the law on the part of both parties to a contract has conferred on one of them an unconscionable advantage, and where there has been neither misrepresentation on one side nor negligence on the other, the rule will be relaxed in a court of equity. But here again we are confronted with the circumstance that appellant in this case was not an innocent purchaser. His own contract of Aug. 19th discloses his knowledge of the doubt which clouded the title to the land in controversy; nevertheless he hastened to make his first payment and conclude the transaction.

Considerable documentary evidence was introduced at the trial of this case, including the papers which evidence the transactions between the parties, and in particular a number of letters written by the appellant subsequent to the consummation of the negotiations. The latter are of slight evidentiary value, as we view the question at issue. These letters disclose an excusable endeavor on the part of Anderson to commit his grantor, Ulbright, to a guaranty of title to the land in dispute, and to hold him responsible in damages for failure to give possession. There are also appended to the deposition of the witness Golden in the transcript copies of papers entitled Defendant's Exhibits "A" and "B" for identification, the contents of which appear to be identical, purporting to be signed by Ulbright and "to agree to settle in full with said Anderson for all losses which shall or may result from not having peaceable possession of, said crops properly harvested and possession of said lands and buildings, for the year 1910, and as long thereafter as quiet and peaceable possession of said lands and crops is disputed or denied by any person or claimant of ownership thereto." It is not clear, however, that the originals were admitted in evidence, and their authenticity was disputed on the stand by Mr. Ulbright.

In the view which the court takes of the underlying equities of this case, it is unnecessary to discuss whether respondent was a holder in due course, or whether the successive transfers of the note were properly alleged and proved. Appellant's contention that respondent took the note subject to all defenses may be conceded, but it cannot aid defendant when his defenses fail. The trial judge was liberal in his admission of evidence which might for any reason be material or relevant to the points at issue. We have carefully gone over the evidence, and we do not find any error in that regard. Neither do we find any prejudicial error in the rulings of the court below excluding certain offered evidence on behalf of defendant. Counsel particularly assigns as error the court's refusal to admit the files in the case of *Ulbright v. Baslington*, already referred to. The court committed no error in that

respect, as the matter offered was not shown to be material to the issues, and its admission would not have aided appellant. Exception is also taken to the allowance of an attorney fee of $1,000. Plaintiff in his complaint prayed for a fee of $1,500, which the lower court reduced to $1,000, and under the circumstances of this case we are not inclined to disturb the amount fixed by the trial court.

The judgment of the lower court is affirmed. Costs awarded in favor of respondent.

Sullivan, J., concurs.

### ON PETITION FOR REHEARING.

#### (June 16, 1914.)

AILSHIE, C. J.—A petition for rehearing has been filed on behalf of appellants, from which it would appear that counsel do not clearly apprehend the grounds upon which the decision of the court was based or its legal effect. It is true, as urged by counsel, that a court of equity may properly, under certain circumstances, grant relief from the consequences of a mistake of law, but not when the party seeking the relief has himself been negligent in safeguarding his interests, and is charged with notice of doubtful title as regards the property he is bargaining for, before consummating the transaction of which he complains.

Counsel calls our attention to the following language in the opinion: "Soon after the deal was closed between Anderson and the Ulbrights for the transfer of section 7, the Ulbrights, in accordance with their agreement of August 19th, began a suit in the district court against Baslington for possession of the disputed area," and it is pointed out that this suit was started on July 22d, nearly a month previous to the contract of Aug. 19th, and could not, therefore, have been in pursuance of that contract. The closing of the deal referred to in the sentence above quoted was evidenced by the original contract of July 6th, to which the contract of Aug.

19th was ancillary. In any event it is immaterial whether the Ulbrights began this suit in pursuance of the contract of July 6th, or in accordance with a later understanding which was evidenced by the contract of Aug. 19th, or independent entirely of any express agreement so to do. The record shows that soon after the negotiations for the property were substantially closed by the contract of July 6th, they did in apparent good faith begin and prosecute a suit for the purpose of acquiring title to the land in dispute on behalf of their grantee.

The petition for rehearing is denied.

Sullivan, J., concurs.