700 P.2d 973

**Floyd E. NELSON and Henrietta L. Nelson, husband and wife, Plaintiffs-Respondents-Cross Appellants,**

v.

**George A. WAGNER and Caroline O. Wagner, husband and wife, Defendants-Appellants-Cross Respondents.**

**No. 15027.**

Court of Appeals of Idaho.

June 4, 1985.

Petition for Review Denied Sept. 25, 1985.

Daniel T. Eismann, Homedale, for defendants-appellants-cross respondents.

David E. Kerrick of Alexanderson, Davis, Rainey, Whitney & Kerrick, Caldwell, for plaintiffs-respondents-cross appellants.

SWANSTROM, Judge.

Floyd and Henrietta Nelson brought this action to quiet title to a strip of land which also was claimed by George and Caroline Wagner. The Nelsons further sought compensatory damages for the Wagners' alleged trespass on the strip, as well as punitive damages. The Wagners counterclaimed. They alleged the Nelsons had misrepresented the location of the boundary line between two parcels the Nelsons owned, one of which the Wagners later

purchased.[1] The disputed strip lay between the boundary line as allegedly misrepresented by the Nelsons and the line established by two surveys. The Wagners requested that the Nelsons be estopped from claiming that the line established by the surveys was the true boundary line. In the alternative, they sought a declaration that they held title to the strip by adverse possession. The district court found for the Nelsons, quieting title in them and awarding damages. The court also awarded the Wagners an easement to maintain an irrigation ditch (the north-south ditch), which supplies irrigation water to their parcel and which is located partially on the disputed strip. The Wagners appealed and the Nelsons cross-appealed. We affirm.

Briefly, the facts are as follows—where those facts are disputed we so indicate. In 1953, the Nelsons acquired a forty-acre parcel (hereinafter the "Forty") located in Canyon County. They acquired an eighty-acre parcel (hereinafter the "Eighty") in 1959 which was situated adjacent to and west of the Forty. Together, the two parcels formed an inverted L-shaped parcel. The Nelsons removed a dilapidated fence which had previously and uncertainly marked the boundary between the Forty and the Eighty. They thereafter farmed all 120 acres as a unit. In 1973, George Wagner approached Floyd Nelson about purchasing some of the property. The negotiations which followed resulted in the sale of the Forty to the Wagners. The Land Sale Agreement described the property sold as: "The Northeast Quarter of the Southwest Quarter of Section 11, Township 3 North, Range 3 West of the Boise Meridian, in Canyon County, Idaho; Together with all water, water rights, ditches and rights of way for ditches appurtenant thereto...." This is how the Forty was described to the Nelsons when they purchased it in 1953.

Floyd Nelson maintains he intended to sell exactly what he purchased in 1953 and, to that end, explained to the Wagners he would sell only by legal description. He further contends that he never went out to view the property with George Wagner until "after we made the sale and I seen [sic] it was going to be conclusive." Nelson, however, admits he told Wagner that a certain irrigation ditch (the Mai ditch) was located on the Eighty and that the north-south ditch was located on the Forty. The north-south ditch lies along the south-half of the western boundary of the Forty. The Mai ditch lies along the entire western boundary of the Forty and is, of course, west of the north-south ditch. On the other hand, Wagner maintains he was never told the sale would be by legal description only. He also contends that Floyd Nelson accompanied him to the parcel *prior* to the sale and pointed out the east bank of the Mai ditch as the western boundary of the Forty.

In 1977, preparatory to converting the north-south ditch from an open to an underground ditch, the Wagners ordered a survey done.[2] The survey revealed that the north-south ditch was actually on the Eighty. Although they moved the ditch to the east when placing it underground, it nevertheless continued to encroach upon the Eighty. The Nelsons knew the results of the survey but did nothing about the encroachment at that time. However, in 1981 waste water from the Eighty flowed across the north-half of the Forty. For some reason, this spurred the Wagners to stake out their claim to land west of the survey line. Accordingly, they placed fence posts along the line they believed Floyd Nelson had indicated was the western boundary of the Forty. Nelson then had his own survey done, which confirmed the fence posts were on the Eighty. He therefore took them down. Wagner replaced them in increased numbers. The Nelsons brought suit.

On appeal, the Wagners raise three issues. First, did the Nelsons make false representations regarding the western

---

1. Before trial the Wagners sold their parcel to another couple who are not parties to this action.

2. The Mai ditch had been converted into an underground ditch by 1975.

boundary of the Forty which would estop them from claiming the boundary as determined by the two surveys? Second, did the Wagners acquire title by adverse possession to the strip of land lying between the boundary as established by the surveys and the fence posts? Third, did the district court err in holding that the cost of the survey ordered by Nelson was recoverable by them as damages? The Nelsons, on cross-appeal, argue that they should have received, as damages, an amount equal to their attorney fees "and resulting inconvenience necessary to maintain this action." In the alternative, they argue the district court should have awarded them attorney fees under I.C. § 12–121, because "Wagner's defense in this matter was unreasonable, unecessary [sic], and frivolous."

■ We will first discuss the issue of estoppel. It is generally true that title to real property can pass by an equitable estoppel. 28 Am.Jur.2d ESTOPPEL AND WAIVER § 81 (1966). There are essentially four elements to an equitable estoppel:

[1] a false representation or concealment of a material fact with actual or constructive knowledge of the truth; [2] the false representation or concealment is made with the intent that it be relied upon; [3] the party asserting estoppel does not know or could not discover the truth; and [4] the party asserting estoppel has relied and acted upon the representation or concealment to his prejudice. *Twin Falls Clinic and Hospital Building Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982).

*Scott v. Castle*, 104 Idaho 719, 725, 662 P.2d 1163, 1169 (Ct.App.1983). We need only concern ourselves with the second element. Therefore, for purposes of our opinion, we will assume, but not decide, that the other elements have been established.

Idaho has implicitly recognized the importance of this second element. In *Brooks v. Jensen*, 75 Idaho 201, 270 P.2d 425 (1954), our Supreme Court pointedly stated several times that the seller *intended* to sell the disputed strip of land and

that the buyers were "led" to believe they were purchasing the strip. The seller, however, had concealed the material fact that there was a dispute about the ownership of the strip. It is clear the seller intended the buyers to act upon a less than candid statement of facts. The buyers in *Brooks* were granted rescission. Likewise, in *Lanning v. Sprague*, 71 Idaho 138, 143, 227 P.2d 347, 349–50 (1951), our Supreme Court affirmed a trial court finding "that the acts of the defendant in representing the boundaries of the land were made with intent to deceive the plaintiffs and to induce them to purchase the real property, and that the representations relied on by the plaintiffs were false." *See also Coolin v. Anderson*, 26 Idaho 47, 140 P. 969 (1914); *Taylor v. Reising*, 13 Idaho 226, 89 P. 943 (1907).

■ The record here demonstrates that Floyd Nelson did *not* intend George Wagner to act upon the false representations as to the western boundary of the Forty. He testified that he intended to sell only what he had bought in 1953. As noted above, when the Nelsons bought the Forty, the description contained in the contract of sale was simply the "Northeast Quarter of the Southwest Quarter of Section 11...." When Nelson sold to Wagner, the contract again contained only this description. Furthermore, Nelson testified that he *told* Wagner of his intent to sell only by legal description. This, of course, Wagner disputes; but the district court found that Nelson had indeed told Wagner of his intention to sell only by legal description. We will not overturn this finding as clearly erroneous. *See* I.R.C.P. 52(a). For these same reasons, it is clear Nelson also did not have the expectation that Wagner would rely upon the false representations. On the contrary, he had every reason to expect Wagner to rely only upon the legal description set out in the contract. Nelson made it clear that he did not know exactly where the boundary was, and that he was selling only by legal description anyway. The district court did not err in holding that the Nelsons were *not* estopped from claiming

the boundary as established by the surveys.

The next issue raised is whether the Wagners obtained title to the disputed strip by adverse possession. The district court held there was no "adversity" in the Wagners' possession of the strip prior to the survey in 1977, because it was not until 1977 that the Wagners discovered they did not, in fact, own the strip. Since the Nelsons filed suit in 1981, the five-year prescriptive period had not run. *See* I.C. § 5–203. The district court's decision on this issue, however, simply cannot be upheld on the ground advanced. As the Wagners correctly point out, even though they did not *know* until 1977 that they occupied a portion of the Eighty, their occupation before 1977 could still have been adverse. *See Beneficial Life Insurance Co. v. Wakamatsu*, 75 Idaho 232, 270 P.2d 830 (1954); *Bayhouse v. Urquides*, 17 Idaho 286, 105 P. 1066 (1909). "[E]very act of the defendant in entering and occupying this land was an assertion of title in himself," whether he entered and occupied by mistake or ignorance, or knowingly and wilfully. *Id.* at 295, 105 P. at 1068. We must therefore determine whether the district court's decision may be upheld upon a different theory. *See Goodwin v. Nationwide Insurance Co.*, 104 Idaho 74, 656 P.2d 135 (Ct. App.1982).

The elements of adverse possession are: (1) the intent to possess; (2) adverse possession (open, notorious, continuous and hostile, for the prescriptive period) in fact; and (3) knowledge by or notice to the party against whom adverse possession is sought to be asserted. *Tremayne v. Taylor*, 101 Idaho 792, 621 P.2d 408 (1980). The burden of proving these elements is generally on the party claiming adverse possession. *Id.* However, once continuous possession for the prescriptive period is proven, a presumption that the possession was adverse arises. *Cf. Stecklein v. Montgomery*, 98 Idaho 671, 570 P.2d 1359 (1977) (concerning easements by prescription). The burden then shifts to the other party to prove that the possession was under

"license, indulgence or special contract inconsistent with a claim of right." *Id.* at 674, 570 P.2d at 1362 (quoting *Eagle Rock Corp. v. Idamont Hotel Co.*, 59 Idaho 413, 431, 85 P.2d 242, 249 (1938)).

After carefully and thoroughly examining the testimony, we conclude that the Wagners have failed to prove adverse possession in fact for the full prescriptive period. Although the Wagners purchased the Forty in 1973, they themselves never farmed it. In 1973 and 1974, a tenant named Donny Pfost farmed half of the Forty and Floyd Nelson farmed the other half. Nelson also farmed the Eighty during these years. There is no evidence, however, to show whether the disputed strip was being farmed as part of the Forty or part of the Eighty. The nature of the crops being raised often made it appear as if the Eighty and the Forty were one field. In 1975, Pfost farmed the entire Forty. He allegedly farmed as close to the east bank of the Mai ditch as possible, repeating a practice carried on in 1973 and 1974 when Nelson farmed half of the Forty. Pfost did *not* testify at trial. However, Floyd Nelson testified that after the Mai ditch was put underground in 1975, he farmed his Eighty "a ways" east of the Mai ditch line. Once again, adverse possession of the strip is in doubt. From 1976 until the Nelsons filed suit in 1981, the Forty was farmed by Earl Tuckness and the Eighty was farmed by his son, Tim. The two Tucknesses shared machinery and labor, and often planted the same crop. As in 1973 to 1975, the crops were often "intermixed" across the boundary, as if only a single field existed. Under these circumstances, it is impossible to determine that Wagner possessed the disputed strip openly, notoriously and hostilely from any particular point in time.

Moreover, these same facts shed doubt on when the Nelsons had knowledge of or received notice that the Wagners were claiming the disputed strip. The evidence would sustain a finding that the Nelsons had knowledge or notice as of 1977 when the Wagners ordered a survey and then ignored the results by ordering their tenant

to farm west of the survey line. Since suit was filed in 1981, the full five-year prescriptive period had not run. We hold that the Wagners did not carry their burden of proving each of the elements of adverse possession. The district court did not error in refusing to grant them title by adverse possession.

The final issue raised on appeal is whether the district court properly awarded the Nelsons, as damages, the cost of the 1981 survey. The Wagners argue that, as a general proposition, the cost of a survey is not recoverable as damages. We disagree. The Nelsons persuasively argue that there is a difference between damages and costs incurred in the preparation for litigation. It has been held that the cost of a survey is not recoverable if incurred in preparation for litigation. *See Stratford v. Wood*, 11 Utah 2d 251, 358 P.2d 80 (1961). Generally, however, a wrongdoer may be held liable for all costs which the victim may sustain as a result of the wrong (as distinguished from costs incurred in preparation for litigation). *See University of Arizona Health Sciences Center v. Supe-rior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983). There is nothing in the record to indicate the survey was ordered in preparation for litigation. Indeed, the Nelsons maintain on appeal that they ordered the survey in an effort to minimize their losses from a continuing trespass. We hold the cost of a survey under such circumstances is recoverable as damages.

We have examined the issues raised on cross-appeal and find them to be without merit. Neither an award of punitive damages nor of attorney fees was appropriate in this case. The judgment of the district court is therefore affirmed. Costs to respondents, the Nelsons. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.