826 P.2d 1328

Gwinn F. RICE and Lena RICE, husband and wife, Plaintiffs–Appellants,

v.

HILL CITY STOCK YARDS COMPANY, a defunct Idaho corporation; the Unknown Heirs and Devisees of R.H. Bennett, Joe Urquidi, P.M. Gandiago, Joe Darrianaga and James Farmer, said individuals being the last directors of Hill City Stock Yards Company and all of said individuals being deceased; E.R. Hanford, if living; the Unknown Heirs and Devisees of E.R. Hanford, if deceased; A.C. Chipman and Rosa B. Chipman, if living; the Unknown Heirs and Devisees of A.C. Chipman and Rosa B. Chipman, if deceased; Camas Prairie Development Company, a defunct Idaho corporation; the unknown last directors, if living, and if deceased, the unknown heirs and devisees of said Last directors of Camas Prairie Development Company, a defunct Idaho corporation; County of Camas, State of Idaho, a body politic corporate; all of the unknown owners and claimants of the following described real property situate in Camas County, State of Idaho, to-wit, Defendants,

and

Faulkner Land and Livestock, Inc., Charles J. Olson, Robert F. Bennett, Hammet Livestock Company, a corporation; Dennis Strom and Adeline M. Urquidi, Defendants–Respondents.

No. 17865.

Court of Appeals of Idaho.

June 6, 1990.

Ling, Nielsen & Robinson, Rupert, for plaintiffs-appellants. Roger D. Ling, argued.

Nelson, Rosholt, Robertson, Tolman & Tucker, Twin Falls, for defendants-respondents. Gary D. Slette, argued.

WESTON, Judge, Pro Tem.

In this quiet title action, we reverse a judgment for defendants and remand the case for entry of judgment in favor of the plaintiffs. The action involves approximately 155 acres of real property in Camas County. The real property in dispute lies adjacent to and west of the original townsite of Hill City, abutting the Union Pacific Railroad. The real property is bisected by State Highway 20. We will address four issues on appeal: (1) whether Rice received valid title to the real property by deed; (2) whether any portion of the real property in question was adversely possessed; (3) what interest Faulkner Land and Livestock may have in the real property; and (4) what interest any of the other defendants may have in the real property.

The pertinent facts are as follows. The real property was originally purchased and owned by the Hill City Stock Yards Company, a corporation. The corporation was formed by a group of sheepmen operating in Camas County. The real property was used by those shareholders, a day or two each year, as a staging area to prepare livestock for shipment by rail. During the 1950's, shipping by rail was discouraged and the stockmen began shipping by truck. Consequently, the real property ceased to be used to prepare livestock for shipment on the railroad. It remained in use only as an occasional stopover point for livestock operators trailing either sheep or cattle to or from the summer range.

The record title to the real property was vested in Hill City Stock Yards Company, which had been incorporated in Idaho on August 30, 1938. In its 1938 annual statement, the corporation listed R.H. Bennett, Joe Urquidi, P.M. Gandiago, Joe Barinaga (listed as Joe "Darrinaga" in the caption of this case), and James Farmer as directors and shareholders. The district court found that these were the last known shareholders when the corporation forfeited its charter on November 30, 1939. I.C. § 30–614

(repealed effective July 1, 1981). The corporation was never reinstated and eventually was dissolved by operation of law on March 1, 1979. I.C. § 30–614.

On February 1, 1967, James Farmer gave his son, J.E. Farmer, a quitclaim deed to the corporation's real property. James Farmer died a few months later. The deed recited that James Farmer acted as the sole surviving trustee of Hill City Stock Yards Company in making the conveyance. J.E. Farmer did not record the deed until 1978, but in 1968 he began paying the taxes assessed against the real property.

Gwinn Rice, a farmer residing at Hill City, used the real property since 1957 with the informal permission of both James and J.E. Farmer. In April, 1981, Rice entered into a formal written lease with J.E. Farmer for a five-year term. After the expiration of the lease, on June 6, 1986, Rice obtained a deed to the real property from J.E. Farmer and his wife. Rice then commenced this quiet title action, claiming title both by virtue of the deed obtained from J.E. Farmer and by adverse possession. After trial, the district court concluded that Rice had no claim to the real property either by deed or by adverse possession. This appeal followed.

We will first consider Rice's claim to the real property based upon the deed received from Farmer. The validity of this deed is dependent either upon the validity of the deed that J.E. Farmer received from his father or upon the establishment of adverse possession by J.E. Farmer. The trial court found that the deed from James Farmer to J.E. Farmer was a nullity and conveyed no interest in the real property. We agree. The deed recited that J.E. Farmer, as grantor, was acting as the "sole surviving trustee of Hill City Stock Yards Company." The trial court found that J.E. Farmer was not, in fact, the sole surviving trustee of Hill City Stock Yards Company. Moreover, the law requires that those serving as statutory trustees, in winding up the affairs of a forfeited corporation, must act in concert, not unilaterally. *Smith v. Steele Motor Company*, 53 Idaho 238, 22 P.2d 1070 (1933). Thus, the deed from

James Farmer to J.E. Farmer was defective and it did not pass title. Nevertheless, the invalid deed gave the grantee color of title relevant to a claim of adverse possession. *See generally Fouser v. Paige*, 101 Idaho 294, 612 P.2d 137 (1980); *Bayhouse v. Urquides*, 17 Idaho 286, 105 P. 1066 (1909); *Boise City v. Wilkinson*, 16 Idaho 150, 102 P. 148 (1909).

Next, we turn to the question of adverse possession. To establish title by adverse possession three elements must be proven: (1) the intent to possess; (2) adverse possession that is open, notorious, continuous and hostile, for the prescriptive period; and (3) knowledge by or notice to the party against whom adverse possession is asserted. *Nelson v. Wagner*, 108 Idaho 570, 700 P.2d 973 (Ct.App.1985) (review denied).

The real property north of Highway 20 consists of two parcels. There is a long, narrow fifteen-acre parcel which lies between the highway and an eighty-acre field belonging to Rice. There is also a field approximately seventy-five acres lying west of Rice's eighty-acre field. It is not disputed that Rice fenced in both the fifteen-acre parcel and the seventy-five-acre parcel with his eighty-acre parcel in 1957. This was with the permission of James Farmer. From approximately 1957 until the time of trial, Rice farmed all of the enclosed real property as a single parcel. Until Rice acquired a lease from J.E. Farmer, his use of the real property was always with the permission of either J.E. Farmer or James Farmer. Rice developed a spring, built a spring house, corrals and loafing shed on the enclosed fifteen-acre parcel. The fences have been regularly maintained on the real property north of Highway 20 since 1957. Over the years, the unfenced parcel was used by various stockmen in the area, including Faulkner, as a resting place and for grazing. The use by other stockmen was with the blessing of Rice's predecessors in title. This occasional use by other livestock owners in the area appeared to be confined to the unfenced southern parcel.

Faulkner testified that he had never used the northern fenced parcel. Thus, the use by others, including Faulkner, appeared to be confined to the unfenced portion and was of a permissive character which would not defeat adverse possession. Where third parties are using a parcel with permission of the adverse possessor, the adverse possessor's claim of title is not defeated. *See Playa de Flor Land & Improvement Co. v. United States,* 70 F.Supp. 281 (1945); *Bruch v. Benedict,* 62 Wyo. 213, 165 P.2d 561, 570 (1946); *Bloodsworth v. Murray,* 138 Md. 631, 114 A. 575 (Ct.App.1921); 3 Am.Jur.2d *Adverse Possession* § 103 (2d ed. 1986).

The use of the real property by Rice as a tenant of J.E. Farmer could be used to support Farmer's claim to ownership by adverse possession. *Wood v. Brown Inc.,* 108 Idaho 739, 702 P.2d 777 (1985) (use by a lessee can be tacked to that of the landlord for purpose of establishing adverse possession). *See also Bayhouse v. Urquides, supra.* We thus conclude adverse possession has been shown during J.E. Farmer's use of the real property, at least as to the northern fenced portion.

We next consider whether the adverse possession of the fenced portion would extend to the unenclosed parcels. As noted, J.E. Farmer possessed the defective quitclaim deed to the entire piece of real property, thus holding under color of title. Pursuant to I.C. § 5–208, adverse possession under claim of title occurs when one of the following occurs: (1) the real property has been usually cultivated or improved; (2) it has been substantially enclosed; (3) if not enclosed, it has been used for the supply of fuel, or of fencing timber for the purposes of husbandry, or for pasturage, or for the ordinary use of the occupant; or (4) a known farm or single lot has been partly improved, the portion of such farm or lot left uncleared, or unenclosed, according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated. We believe that the adverse possession of the fenced parcel would extend to the balance of the real property under I.C. § 5–208(4). The unfenced parcel was used by Farmer and Rice under claim of right—and was permissibly used by others—for watering, resting and grazing livestock.

The northern parcel was enclosed and adverse possession was established thereon. The southern parcel, as already established, was customarily used for grazing. Such use continued during the times relevant to this case; thus, the southern parcel must be deemed to have been occupied for the same length of time as the northern parcel pursuant to I.C. § 5–208(4). *Crandall v. Goss,* 30 Idaho 661, 167 P. 1025 (1917); 3 Am.Jur.2d *Adverse Possession* § 26 (2d ed. 1986). We conclude that Rice established a valid claim to both parcels, based on his deed and Farmer's adverse possession.

We now consider the claims of other parties. Faulkner claims an interest in the real property as a successor to the Hill City Stock Yards Company. Faulkner's claim as successor is unsupported because Faulkner has no deed or stock in the company. In the findings of fact, the district court found that by purchasing the sheep ranching business of Riley Smith, James Farmer and J.E. Farmer, Faulkner "obtained an interest in the Hill City Stock Yards Company." In the conclusions of law, the district court concluded that "[t]he defendants [Faulkner], or some of them, have succeeded to the right to use the property as beneficiaries." The district court apparently interpreted the sheep ranching sale to have conveyed shareholder status to Faulkner in the Hill City Stock Yards Company. Such a legal conclusion is erroneous pursuant to I.C. § 30–1–23 which requires issuance of certificates to represent ownership of shares of a corporation. No share certificates of Hill City Stock Yards Company were ever issued to Faulkner or transferred to him by Riley Smith, James Farmer or J.E. Farmer. Therefore, we hold that Faulkner did not succeed to the beneficiary status of the Hill City Stock Yards Company holdings.

Faulkner's claim also ignores James Farmer's individual inability to convey real property titled to the Hill City Stock Yards Company in 1942. Therefore, Faulkner did not obtain any ownership in-

terest in the real property by conveyance. In any event, such an interest would have been extinguished by Rice's subsequent acquisition of title by adverse possession.

We will next explore whether Faulkner's use of the real property established an easement or license in favor of Faulkner, or was otherwise sufficient to defeat Rice's claim of adverse possession. The district court found that Faulkner used a portion of the real property, interfering with Rice's claim of exclusive possession. However, such use by Faulkner and other livestock operators was permissive; it was not an adverse and hostile use. A prescriptive right cannot be acquired if the use of the real property is with the owner's permission. *Branson v. Miracle*, 111 Idaho 933, 729 P.2d 408 (Ct.App.1986).

Furthermore, a license is revokable at will and gives no property interest to the licensee. *Id.* This revocable license may continue by implication even after the licensor transfers or conveys his interest in the real property. *Id.; see Cooper v. Boise Church of Christ of Boise, Idaho, Inc.*, 96 Idaho 45, 524 P.2d 173 (1974). The new owner may revoke the license at will. *Branson, supra.* This is precisely what Rice did—he revoked Faulkner's license to use the southern parcel.

Finally, as to any interest claimed by the other defendants, their claim to the northern parcel is foreclosed due to the successful adverse possession by Rice as analyzed above. As to the southern portion, on remand, the district court is instructed to make findings in respect to all of the defendants' interest pursuant to I.C. § 5–208 or other sources of law urged by the defendants in support of their claims.

The judgment is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

Costs to appellants, Rice. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.